WILLEY and another, Appellants, vs. RUTHERFORD,
Respondent.

*October 12 — October 30, 1900.*

*Real-estate brokers: Commissions: Court and jury.*

Defendant, wishing to sell a farm, agreed to pay a commission to a
broker if the latter would bring him a man with whom he could
deal. The broker brought a man who wished to trade, but he and
defendant disagreed as to values and separated, without further
communication until about six months later. The broker testified
that in the meantime he had several conversations with defend-
ant, urging the latter to make the trade, the last being about two
weeks before the trade was consummated. Defendant claimed that
the trade was an independent transaction, brought about by an-
other real-estate agent. The latter testified that he acted as the
agent of the other party to the trade. *Held,* upon the evidence,
that it was a question for the jury whether the original negotia-
tion was completely closed and ended, so that the trade finally
made was an independent one with which the broker had nothing
to do.

APPEAL from a judgment of the county court of Jefferson
county: GEORGE GRIMM, Judge. *Reversed.*

This is an action by real-estate brokers to recover their
commissions.

Many of the facts were undisputed. It appears that the
defendant owned a farm of 160 acres in Jefferson county,
and desired to dispose of it; that the plaintiffs were part-
ners and real-estate agents at Lake Mills, in the same county;
that the plaintiff *Dodge* met the defendant in May or June,
1898, and had a conversation with him about selling the
farm, which finally resulted in the defendant's saying to
*Dodge,* " I will give you one hundred dollars to bring me a
man I can deal with," and *Dodge* replied, "All right, I'll
set her going." After this plaintiffs endeavored to find a
possible purchaser, and finally, in August following, found
one Schrank, who owned a farm of eighty acres, some miles

distant, and who wished to trade for a larger farm.  *Dodge* brought *Rutherford* and Schrank together, and there were several interviews, but they disagreed as to values, and *Rutherford* and Schrank separated, and had no further communication together until about the 1st of February, 1899. *Dodge* testifies that in the meantime he had several conversations with *Rutherford* about the deal, and urged him to trade for the Schrank farm; that the last interview was about a couple of weeks before the deal (hereinafter stated) was made; and that he (*Dodge*) said to *Rutherford* at one of the interviews that the Schrank farm was the best deal he could find, that he better think it over, and go down and close it up, and *Rutherford* said that he would think it over but he didn't like the Schrank farm.

In February, 1899, *Rutherford* and Schrank finally traded farms, Schrank paying *Rutherford* $2.50 more per acre for the excess of land then he had offered him in August preceding.  It was claimed by defendant that this trade was an entirely independent transaction, and was brought about by one Bennett, another real-estate agent, living at Jefferson.  It appeared by Bennett's testimony that he had both the *Rutherford* and Schrank farms in his hands for sale; that in the latter part of January, 1899, he showed Schrank a farm near Whitewater, but Schrank did not like it, and said there was a farm near Lake Mills he liked better; that he (Bennett) concluded that he referred to the *Rutherford* farm, and went to see *Rutherford*, got him to go down to Schrank's farm again, and the trade was consummated; that he was acting in that matter as agent for Mr. Schrank. *Dodge* testified that he learned of the deal soon after it was made, and saw *Rutherford*, and asked him what he traded for, and *Rutherford* told him he traded "with your man Schrank."

A verdict for the defendant was directed, and from judgment thereon the plaintiffs appealed.

For the appellants there was a brief by *Rogers & Rogers*, and oral argument by *W. H. Rogers.*

*N. H. Falk*, for the respondent, as to plaintiffs' right to a commission, cited 4 Am. & Eng. Ency. of Law (2d ed.), 977, 978; *Livezy v. Miller*, 61 Md. 336; *Walker v. Osgood*, 93 Am. Dec. 168, note; *Platt v. Johr*, 9 Ind. App. 58; *Watts v. Howard*, 51 Ill. App. 243; *Tinsley v. Scott*, 69 Ill. App. 352; *Whitcomb v. Bacon*, 64 Am. St. Rep. 317, and cases cited; *Francis v. Eddy*, 49 Minn. 447; *New York & B. D. E. Co. v. Traders & M. Ins. Co.* 42 Am. Rep. 440; *Earp v. Cummins*, 93 Am. Dec. 718.

Winslow, J. The contract between the parties was undisputed. It was not a contract to sell *Rutherford's* farm, or to find a purchaser at any specified price, but simply a contract to bring *Rutherford* a man with whom he could deal satisfactorily. The plaintiffs did produce a man with whom *Rutherford* finally made a satisfactory trade, and the only possible question in the case was whether the deal finally made can fairly be said to have been made as a result of the efforts of the plaintiffs. Was the transaction a continuous one notwithstanding the temporary suspension of negotiations? It may, perhaps, be true that there might have been so complete and final a closing of the negotiations between *Rutherford* and Schrank in August that the agreement made in February would be considered an entirely new transaction, but there was certainly considerable evidence in the case tending to show that the matter was never definitely closed, that both parties were still considering it, and that the dealings in February were simply a renewal or continuation of the original deal. The appearance of Bennett in the February transaction is not a controlling fact, although it is entitled to consideration. He was acting, as he testified, simply as Schrank's agent, so that his action in going to see *Rutherford* was really as if Schrank himself had gone to see *Rutherford* and again opened the matter.

It is entirely clear to our minds that the evidence did not warrant the court in saying that the original negotiation brought about by the plaintiffs was completely closed and ended, and that the February deal was an independent and separate transaction, with which the plaintiffs had nothing to do.   The question was for the jury.

*By the Court.*— Judgment reversed, and action remanded for a new trial.