S. J. FRANCIS vs. E. W. EDDY et al.

Argued April 14, 1892. Decided May 3, 1892.

**Evidence Insufficient to Justify the Verdict.**—Action by a real-estate broker to recover commissions for procuring a purchaser for defendants' property. *Held*, that the evidence did not justify the verdict, because it did not show that plaintiff procured the purchaser, or that his efforts were the procuring cause of the sale.

Appeal by defendants, E. W. Eddy and Judith S. Walsh, from an order of the Municipal Court of the city of Minneapolis, *Mahoney, J.*, made January 13, 1892, refusing a new trial, after verdict for plaintiff for $262.50. The discussion in this court was upon the evidence, —whether it sustained the verdict.

*J. E. Waters*, for appellants.

*Hart & Brewer*, for respondent.

MITCHELL, J. The plaintiff brought this action to recover compensation, as a real-estate broker, for procuring a purchaser for a lot belonging to the defendants. The evidence discloses substantially the following state of facts:

The lot had been on the market about two years. It was, and during all that time had been, listed for sale by defendants with another broker, named Tabour. Plaintiff solicited defendants to list it with him, and to give him the exclusive sale of it. Defendants did list it with him under a contract to the effect that, if he procured a purchaser "at such price as defendants should agree on," (that is, at a price acceptable to defendants,) they would pay him a reasonable commission; but they declined to give him any exclusive agency.

Plaintiff knew that the property was also listed with Tabour. Stress is laid upon the fact that defendant Eddy, although declining to give plaintiff the exclusive agency, said to him: "You notify me who your customers are, and if you have any one that means business, and the property is sold to that customer, you will get your commission just the same;" but we see nothing in this which at all

changes the legal effect of the contract as above stated, which is exactly as it is alleged in the complaint.

Defendants' asking price was $10,000, but they had given the brokers to understand that they would shade this somewhat, if necessary to effect a sale. Collom (the purchaser whom plaintiff claims to have procured) already knew that the property was for sale, and was listed with Tabour. In fact, a year or two before, he had made Tabour an offer for the property, which defendants refused to accept, when the negotiations had for the time terminated. It also appears that about the time, or shortly before, the property was listed with plaintiff, and before Collom knew the fact, he had had some talk about the property with Tabour's clerk, who gave him a price on the property higher than that for which it was afterwards sold.

Plaintiff, after the property was listed with him, advertised it, giving its general location, but apparently not describing the particular lot. Collom saw this advertisement, and, inferring that it referred to the lot in question, went to plaintiff's office, and inquired what it could be bought for, to which plaintiff replied, "$10,000." Collom left, saying he would see plaintiff again soon, evidently not having made up his mind whether he would buy. Plaintiff immediately went and told defendant Eddy that Collom had been to see him about the property. Eddy remarked: "He is the most prospective party you have struck yet. Go and see him again." Thereupon plaintiff went to see Collom, and after some talk, at which no decision was arrived at, Collom said he would see plaintiff the next afternoon, and let him know.

So far as appears, $10,000 was the only price ever named by plaintiff to Collom. This ended plaintiff's connection with the matter.

Collom never went to see plaintiff again, but the next day, having started for Tabour's office to see him about different pieces of property, (being, as he says, in quest of bargains,) he met Tabour on the street and a conversation ensued, in which Tabour told him that he thought $9,500 would buy the lot, whereupon Collom offered to give that for it. Thereupon Tabour went and submitted the offer to defendants, who accepted it, and entered into a contract to that effect, in pursuance of which a sale and conveyance to Collom were consum-

mated at the price of $9,500. It appears that at the time defendants accepted this offer they did not know, as Tabour did not at that time disclose, the name of the purchaser. But we lay no stress upon this fact, as, in our judgment, it does not affect the legal rights of the parties in this case.

Upon this state of facts, we think that plaintiff was not entitled to recover. If the sale had been the result exclusively of the acts of plaintiff and the defendants, perhaps it would have been a question of fact for the jury whether plaintiff's efforts were not the efficient cause of the sale. But in this case another and entirely independent factor intervened, to wit, the acts of the other broker, Tabour. To entitle a broker to compensation he must have been the efficient agent or procuring cause of the sale. He must have found and produced a purchaser, and the sale must have proceeded from his efforts as broker; and the burden is on him to prove this affirmatively. In the present case the plaintiff was not even the one who first put Collom on the track of the property, for the latter already knew that the property was for sale, and was listed for that purpose with Tabour, with whom he already had some negotiations regarding its purchase. Plaintiff had never made any offer to Collom which he had accepted, or, so far as appears, ever would have accepted. What might have occurred had the negotiations continued, and had Collom not gone to Tabour, is a matter of mere conjecture. It was the efforts of Tabour, and not of plaintiff, which were the immediate procuring cause of the sale. There is no evidence that Tabour used any unfair means to get a customer away from plaintiff; and, even if he had, the defendants would not have been in any wise responsible for it. Neither is there any evidence that there was any collusion between defendants and Tabor to deprive plaintiff of compensation. Collom was evidently experimenting, as he had a right to do, to see from which broker he could get the best terms, and, having received from Tabour better terms than he had from plaintiff, he accepted them; and, Tabor having produced a custmer ready and willing to buy on terms satisfactory to defendants, they accepted the offer. Plaintiff knew that the property was also listed with another broker, and hence that he was subject to the chances of competition, and that, if he

v.49M.—29

entered into negotiations with a prospective customer, and, before any sale was effected, the party went to his competitor, or fell under his influence, he was liable to lose his labor.

This was one of the inevitable risks of the business. All there is of this case is that plaintiff attempted to procure Collom as a purchaser for the property for $10,000, and did not succeed, or at least had not when Collom went to the other broker, who succeeded in selling to him for $9,500. We fail to see how, on this state of facts, it can be claimed that plaintiff procured a purchaser for the property. Owners have a right to place their property with more than one broker; but, if plaintiff can recover on the facts of this case, such owners, however honestly and impartially they may have acted, would be placed in a most embarrassing position, and subjected to the liability of paying double commissions in every case where it could be shown that the purchaser produced by one broker had ever spoken to the other broker about the property. See *Vreeland* v. *Vetterlein*, 33 N. J. Law, 247.

Order reversed.

New trial ordered.

(Opinion published 52 N. W. Rep. 42.)