Burdon v. Briquelet, 125 Wis. 341.

BURDON, Appellant, vs. BRIQUELET, Respondent.

*May 5—June 23, 1905.*

*Real-estate brokers: Commissions: Procuring cause: Questions for jury: Appeal and error: Findings, when disturbed: Evidence.*

1. Where no price is fixed by the seller, but the broker, under his employment, produces a purchaser with whom the seller deals and agrees upon a price, the broker is entitled to his commission.

2. In an action by a real-estate broker to recover commissions for the sale of land, the evidence, stated in the opinion, is *held* to support a finding by the jury that the broker was the procuring cause, and that the transaction as finally carried out was not due to causes other than his efforts.

3. Whether the efforts of such a broker are the efficient producing cause, and the value of his services, are questions for the jury, and their findings thereon, being supported by the evidence, cannot be disturbed.

4. In an action by a real-estate broker to recover commissions the complaint was on *quantum meruit.* In view of the evidence, stated in the opinion, and the allegations of the complaint, it is *held* that the finding of the jury as to the value of plaintiff's services could not be disturbed.

APPEAL from a judgment of the circuit court for Brown county: SAMUEL D. HASTINGS, Circuit Judge. *Reversed.*

The complaint in this action charges that on the 15th day of May, 1901, and thereafter, the plaintiff, at the special instance and request of the defendant, performed services in the sale of defendant's farm located in Brown county, Wisconsin, which services were worth $159.15. The answer is a general denial. The case was tried in justice court, judgment rendered in favor of plaintiff, and appeal taken to the circuit court of Brown county, where trial was had before the court and a jury. A special verdict was taken, and the jury answered the questions as follows:

"(1) Did the defendant employ the plaintiff to sell his undivided interest in the farm owned by him and Mr. Quatsoe as tenants in common? *Answer.* Yes. (2) If you answer the first question 'Yes,' then answer this: Was the plaintiff, *Burdon,* the procuring cause of the transaction as consummated between *Briquelet* and Quatsoe? *A.* Yes. (3) If you should answer the first question 'Yes,' then answer this: Was the agreement that *Mr. Burdon* should have five per cent. commission on the purchase price of the property? *A.* No. (4) If you should answer the third question 'No,' then answer this: What was the market value of plaintiff's services? *A.* $79.70."

On the coming in of the verdict the plaintiff moved that the answer "No" to the third question be stricken out and "Yes" inserted; that the answer "$79.70" to the fourth question be stricken out and "$159.15" inserted. Defendant made several motions to the effect that the answer "Yes" to the second question be stricken out and "No" substituted; that the answer to the fourth question be set aside and "six cents" substituted; and for judgment dismissing the complaint, with costs. The court set aside the answer "Yes" to the second question and substituted "No," and rendered judgment against plaintiff dismissing the complaint with costs, from which this appeal was taken. Error is assigned

because the court amended the verdict as requested by defendant, and because of the refusal of the court to amend the verdict as requested by plaintiff, and for dismissal of the plaintiff's complaint.

For the appellant there was a brief by *Wigman, Martin & Martin,* and oral argument by *P. H. Martin.*

*Sol. P. Huntington,* for the respondent.

KERWIN, J.   1. Error is assigned because the court below found contrary to the answer of the jury to the second question of the special verdict that the plaintiff was not the procuring cause of the transaction as consummated between the defendant and his cotenant, Quatsoe, and in ordering the answer "Yes" stricken out and "No" substituted.   Defendant and Quatsoe were the owners in common of a tract of land and buildings thereon in Brown county, Wisconsin, each owning an undivided one-half interest therein.   The land consisted of 66.66 acres, extending from the Fox river on the west to East river on the east, and was cut into two parts by the state road, leaving 36.66 acres on the east and thirty acres on the west side of said state road.   For some time prior to 1901 defendant had desired to dispose of his interest in this land, and had talked with his cotenant, Quatsoe, with a view of division or adjustment of the matter, but nothing came out of the conference.   Plaintiff testified that in 1901 he was employed by defendant to make a sale of his interest in the property, while defendant testified that he employed plaintiff to suggest a scheme or plan of division.   The jury found upon this contention in favor of the plaintiff, and by their answer to the first question of the special verdict found that plaintiff was employed to make a sale of defendant's interest in the property.   There is ample evidence to support this finding, and it must therefore, upon well-established principles, be regarded as a verity in this case.   The controlling question, therefore, is whether there was sufficient

evidence to sustain the answer to the second question of the special verdict, to the effect that plaintiff was the procuring cause of the transaction as consummated between defendant and his cotenant. The learned circuit judge of the court below held that the transaction between defendant and Quatsoe did not amount to a sale within the meaning of the contract between plaintiff and defendant, and that plaintiff was not the procuring cause of the transaction as consummated, and ordered the answer to the second question, "Yes," stricken out, and "No" substituted. It appears from the evidence that shortly after plaintiff was employed he saw Quatsoe, believing him to be the person most likely to purchase, since he owned an undivided interest in the land, and informed him that defendant's interest was for sale; that Quatsoe said he would buy, divide, or do anything to get a settlement, and would give more than any other man could afford to; that plaintiff had several interviews with Quatsoe afterwards concerning the purchase of defendant's interest and reported such interviews to defendant; that he at one time got a proposition of $3,000 from Quatsoe, with an intimation that, if necessary, he might pay more; that plaintiff asked defendant to fix a price on his interest, but defendant declined to do so, saying that he could not set any price; that he would come to that later, and requested plaintiff to continue his negotiations with Quatsoe and see what he could do and report. Plaintiff continued his negotiations with Quatsoe and reported from time to time, but defendant never fixed a price, and plaintiff finally advised Quatsoe to see defendant, and told him that any arrangement he made with defendant would be satisfactory to him.

It is quite clear from the testimony that Quatsoe desired to purchase defendant's interest, and it is equally clear that defendant, in the sale of his interest, in case one should be made, desired to reserve a portion of the property, although, as is established in this case, he employed plaintiff to sell his

entire interest.   There is evidence to the effect that, as a re-
sult of Quatsoe's learning from plaintiff that defendant's in-
terest was for sale, Quatsoe made the proposition which was
finally accepted.   Plaintiff could not make a price because
defendant gave him none, his purpose evidently being to hold
off on price or terms of sale as long as possible, with a view
of getting the best terms he could from Quatsoe.   It also ap-
pears that Quatsoe did not know that defendant's interest
was for sale until so informed by plaintiff, and that plaintiff
was the means of bringing defendant and Quatsoe together
under negotiations which afterwards resulted in the consum-
mation of the transaction involving the disposal of defend-
ant's interest in the property in question.   And, where no
price is fixed by the seller, but the broker, under his em-
ployment, produces a purchaser with whom the seller deals
and agrees upon a price, the broker is entitled to his com-
mission.   *Stewart v. Mather,* 32 Wis. 349 ; *Herman v. Mar-
tineau,* 1 Wis. 151; *Francis v. Eddy,* 49 Minn. 447, 52 N.
W. 42.   The learned circuit judge, in ordering judgment
for defendant, held that the services performed by plaintiff
were under contract to make a sale, and that an agreement to
make a sale is not an employment to get a cotenant to agree
upon partition, and that, since all services performed by
plaintiff were in endeavoring to bring about a sale of defend-
ant's interest, and the deal finally consummated being a parti-
tion and not a sale, within the terms and meaning of plaint-
iff's employment, as found by the jury, plaintiff was not the
procuring cause, and hence there was no evidence to support
the finding of the jury.   We are unable to bring ourselves to
the conclusion of the learned circuit judge in this regard.
From a careful examination of the testimony we are con-
vinced that there is ample evidence to support the finding of
the jury on the second question.   It is obvious that the thing
sought by defendant was the disposal of his interest in the
land in question.   He testified:

"I wanted to get out of being in partnership; that is all. I wanted my share. . . . I was trying to save all the land I could. . . . *Mr. Burdon* was ready to sell my property entirely, and I objected to it. I asked for a division."

It is established that the plaintiff was employed to make a sale, and defendant wished to save all the land he could. Defendant further testified that he knew that Quatsoe wanted to buy his interest, so it is very clear that the reservation of a part by defendant was in his interest, and a favor to him, which he secured in closing the deal with Quatsoe. Had the defendant transferred all his interest to Quatsoe for an agreed price, there would seem to be no doubt but that plaintiff would be entitled to his commission, because the procuring cause of the sale. In the consummation of the transaction the defendant sold all his interest in the 36.66 acres east of the state road to Quatsoe, together with his interest in the buildings on the west side, and divided the thirty acres on the west side of the road with Quatsoe under an agreement whereby Quatsoe conveyed to defendant his interest in the east fifteen acres of said thirty-acre tract, and defendant conveyed to Quatsoe his interest in the west fifteen acres of said tract. This disposition was more satisfactory to defendant than though he had sold his whole interest, and therefore we are unable to see any force in the contention that such division of the thirty-acre tract would deprive plaintiff of his commission. *Delaplaine v. Turnley,* 44 Wis. 31. It is quite obvious that the deal was carried out in the best interest of defendant and in the way he desired, namely, to get out of being in partnership and at the same time save a portion of the land. The deal as consummated resulted in a sale by defendant of all his interest in the land to Quatsoe, except fifteen acres which he desired to retain, Quatsoe conveying his interest therein to defendant in lieu of defendant's conveyance to Quatsoe of his interest in the west fifteen acres. We think the tr nsaction as carried out, in view of all the

circumstances in the case, amounted to a sale of defendant's interest in the property in question within the meaning of the contract between plaintiff and defendant. *Delaplaine v. Turnley, supra; Bell v. Siemens & H. E. Co.* 101 Wis. 320, 77 N. W. 152; *Thornton v. Moody* (Tex. Civ. App.) 24 S. W. 331. It is contended that the transaction as finally consummated was brought about by causes not attributable to plaintiff. It is perhaps true, as appears from the evidence, that, long prior to the employment of plaintiff, defendant had approached Quatsoe on the subject of adjustment of their interests, but nothing was accomplished at that time, and it does not appear that the negotiations were ever renewed, or had any connection with the transaction as finally consummated. On the contrary, it seems quite clear that the transaction as carried out originated in the services performed by plaintiff under his employment to make a sale of defendant's interest. In any event we think there is ample evidence to support the finding of the jury that plaintiff was the procuring cause, and that the transaction as finally carried out was not due to causes other than the efforts of the plaintiff. It was for the jury to say, upon all the testimony, whether the efforts of the plaintiff were the efficient, producing cause, and their finding upon the question, being supported by the evidence, cannot be disturbed.

2. It is further assigned as error that the court below should have amended the answer to the third question of the special verdict as to whether or not plaintiff should have five per cent. commission by striking out "No" and substituting "Yes," and that the answer to the fourth question as to market value of plaintiff's services should have been amended by striking out "$79.70" and inserting "$159.15." These errors may be considered together. It is claimed on behalf of plaintiff that the testimony is uncontradicted that his commission was to be five per cent. on the value of the property sold. This contention cannot be sustained. It is true that

some months before the employment of plaintiff, in a conversation had between him and defendant, he stated that his commission for handling real estate was five per cent.; but nothing further was said upon the subject at that time, and no explanation was made whether it was five per cent. up to a certain amount and less above that, or whether conditions varied the percentage. Afterwards, when defendant employed plaintiff, nothing was said with reference to commission. The testimony tends to show that commission varied from three to five per cent., depending upon the amount involved and the circumstances of the case. Moreover, the complaint does not allege that plaintiff was to have five per cent. commission, but is on *quantum meruit,* alleging the performance of the services and that they were reasonably worth $159.15. In the face of the evidence and allegations of the complaint it cannot be said there was any agreement that plaintiff was to have five per cent. commission. Therefore the answer to the third question cannot be disturbed. The answer to the fourth question places the market value of plaintiff's services at $79.70. In view of the fact that there was no agreement that he was to have five per cent. or any particular percentage, and that the suit is brought to recover what the services were reasonably worth, the question of the value of plaintiff's services, upon all the evidence, was a question of fact for the jury; and unless we can see that the finding upon this question is against the clear preponderance of the testimony we cannot disturb it. True, there is testimony that on sales below $3,000 five per cent. is the usual charge and on sales above $3,000 three per cent.; and in estimating plaintiff's commission in the case at bar at three per cent. upon the value of the property sold it would amount to something more than $79.70; but it cannot be said, upon all the evidence, that $79.70 is not reasonable compensation for the services performed by plaintiff. All the evidence was before the jury with reference to the value of plaintiff's

services, and they found the value $79.70. We cannot see
that this finding is not supported by the evidence. It fol-
lows, therefore, from what has been said that the judgment
of the court below must be reversed.

*By the Court.*—Judgment reversed, and the cause re-
manded with instructions to the court below to render judg-
ment in accordance with the verdict.