Burd, Appellant, vs. Webster, Respondent.

*March 22—April 17, 1906.*

*Real-estate brokers: Commissions: Evidence: Revocation of agreement: Delay: Abandonment of contract: Identity of purchaser.*

1. Evidence that, at the request of one who acted as agent between the seller and buyer of a farm, defendant had pointed out the place to the buyer and that he afterwards drew the deed for the transfer, is not sufficient to warrant recovery of a commission on such sale by plaintiff under an agreement by which he was to receive a commission on sales made through defendant's agency.
2. An agreement by plaintiff to pay defendant a certain sum for furnishing a buyer for a certain farm was not revoked, after plaintiff had furnished the name of a probable buyer, by defendant's informing plaintiff that he would pay no commission unless the farm should sell for a certain price,—plaintiff not having assented to such modification of the agreement.
3. The fact that, after plaintiff had furnished the name of a probable buyer, negotiations for the sale were protracted and delayed for some four months before it was consummated, did not show an abandonment of the agreement to pay a commission.
4. Although the formal conveyance was to a third person, yet the evidence is *held* to show that the sale of a farm, negotiated by defendant, was to the person whose name, as a probable buyer, was furnished by plaintiff.

APPEAL from a judgment of the circuit court for St. Croix county: E. W. HELMS, Circuit Judge. *Reversed.*

About the 1st day of February, 1903, the plaintiff, who had been engaged in the real-estate business at New Richmond, St. Croix county, Wisconsin, made arrangements with the defendant to come to Dane county to live and to engage in the real-estate business in Dane county as agent of defendant. By this arrangement plaintiff was to have the exclusive agency for defendant of certain portions of Dane county and was to have a commission of two per cent. on all sales made therein through defendant's agency.

Plaintiff alleges that in the following January defendant made a sale of a certain farm belonging to one Humiston to a purchaser named Parman residing in that portion of Dane county of which he had the exclusive agency, and that defendant. thereby became indebted to him in the sum of $170.40, the two per cent. commission previously agreed upon. The evidence showed that the farm upon which this commission was claimed was situated in St. Croix county and that it had been listed as for sale by defendant. The evidence also showed that this purchaser resided at Waunakee, Dane county, within plaintiff's territory, but it appears that this farm was sold through the agency of one Mr. Palmer of Madison, Wisconsin, and that defendant did not negotiate the sale and was not paid a commission on it. Upon this cause of action the court directed a verdict in favor of defendant.

For a second cause of action plaintiff alleges that on or about the 1st day of March, 1903, defendant had for sale a farm in St. Croix county known as the Burrows farm, and that defendant at or about that time made an oral agreement with him to pay him $500 if he would enable defendant to procure a purchaser for this farm. Plaintiff alleges that pursuant to such agreement he gave defendant the name of one Bondwell of St. Paul, Minnesota, as a prospective purchaser; that he wrote to Bondwell, and that defendant carried on negotiations with him which finally resulted in a sale of the farm to Bondwell; that the title, for the convenience of Bondwell, was conveyed to one Duffy, who had advanced the money to Bondwell, but that the sale was in fact made to Bondwell, and that plaintiff was the procuring cause of obtaining Bondwell as a purchaser.

The evidence of defendant was to the effect that the conversation with plaintiff in the spring of 1903 had reference to another farm, known as the Martin farm, and that plaintiff gave him the name of Bondwell as a probable purchaser of this farm; that he entered into negotiations with Mr. Bond-

well for the transfer of the Martin farm, but that they were unable to make the sale. Defendant denied that the agreement had any reference to the sale of the Burrows farm to Bondwell, and he also claims that at the time of the negotiations in the spring he had no interest in the Burrows farm. He testified that in July of that year he offered plaintiff a commission of $500 for a sale of the Burrows farm, provided the place sold for $22,500; that the sale to Mr. Duffy was a *bona fide* sale; and that the negotiations with Mr. Bondwell for the sale of the Burrows farm took place after the negotiations with Bondwell for the sale of the Martin farm, pursuant to the arrangement made with plaintiff in March or April, had failed and proven fruitless. Plaintiff testified that the agreement made in the spring had reference to and included both the Martin and Burrows farms.

The following special verdict was returned by the jury:

"We, the jury impaneled to try the issues in the above entitled action, answer the special interrogatories submitted to us as follows: 1. Was a conversation had between plaintiff and defendant, at Madison, between February 1 and March 25, 1903, in which defendant offered to the plaintiff that he, the defendant, would give plaintiff a commission of $500 if plaintiff would furnish a buyer for the Burrows farm? A. Yes. 2. If you answer 'Yes' to question 1, then answer this: At the time of the conversation found by you in answer to question 1, was it understood by the plaintiff and defendant that the plaintiff must furnish a buyer for the Burrows farm at $22,500, in order to entitle plaintiff to a commission of $500? A. No. 3. If you answer question 1 'Yes,' then answer this: During the conversation mentioned in question 1, was the name of W. J. Bondwell mentioned as a probable purchaser of the Burrows farm? A. Yes."

The court refused to enter judgment for the plaintiff in accordance with the verdict, but held that under the undisputed evidence there had been a cancellation of the spring contract and that defendant was entitled to judgment and costs. This is an appeal from such judgment.

For the appellant there were briefs by *Tenney, Hall & Tenney*, and oral argument by *F. W. Hall*.

For the respondent there was a brief by *Olin & Butler*, counsel, and oral argument by *H. L. Butler*.

SIEBECKER, J. Plaintiff contends, as to the first cause of action, that the testimony adduced warrants the inference that the sale of the Humiston farm to Parman was accomplished through defendant's agency. There seems to be no dispute as to the terms of the agreement under which plaintiff claims the right to a commission on the sale. Under its terms plaintiff was entitled to a commission if the sale was effected through defendant's agency. The trial court held that the evidence furnished no ground, in any reasonable view of it, for an inference that the sale of the farm to Parman was effected through defendant's agency. An examination of it confirms this conclusion. True, the defendant, at the request of one Palmer, who acted as agent between the seller and buyer in the transaction, pointed out the place to the buyer, and drew the deed for the transfer, yet there is nothing to show that defendant acted as the agent for either party to the transaction or that he received any commission or compensation for whatever he did in the matter. Under these circumstances the plaintiff failed to establish any ground for recovery under the contract upon which he relies.

For a second cause of action plaintiff alleges that the defendant agreed to pay him the sum of $500 for furnishing the name of a purchaser for a farm situated in St. Croix county, known as the Burrows farm and held by defendant as real-estate agent. Plaintiff alleges that this agreement was made in the city of Madison in the latter part of February or the first part of March, 1903, and that he, pursuant thereto, furnished to defendant the name of Mr. Bondwell of St. Paul, Minnesota, as a probable purchaser, and that as a result thereof the farm was thereafter sold to Mr. Bondwell by the

defendant.    Defendant denies that such an agreement was made, and alleges that the agreement did not pertain to this farm, but covered another known as the Martin farm.    He also claims that whatever agreement was made had been canceled and revoked before any negotiations were had between him and Mr. Bondwell for the sale of the Burrows farm. The issues were submitted to the jury upon the evidence, who found that the agreement was made by the parties as plaintiff alleges, that under it defendant agreed to pay plaintiff a commission of $500 if he furnished a buyer for the Burrows farm, that there was no provision in the agreement providing that such commission was not to be paid unless the farm brought the sum of $22,500, and that plaintiff did furnish defendant the name of Mr. Bondwell as a probable purchaser.

It appears that plaintiff had discovered Mr. Bondwell to be a prospective customer and that he advised him by mail that he had furnished defendant with this information and had referred to him as a probable purchaser, to the defendant.    It also appears that defendant soon thereafter communicated with Mr. Bondwell for the sale of the Martin farm and that Mr. Bondwell thereupon examined it but declined to purchase.    At this time negotiations ceased between defendant and Mr. Bondwell until the following July, when the negotiations concerning the Burrows farm were taken up and finally resulted in a transfer of it to a Mr. Duffy under an arrangement between Mr. Duffy and Mr. Bondwell whereby the defendant and Mr. Duffy took a transfer of $13,000 of an electric light company's bonds from Mr. Bondwell and a mortgage of $12,000 on this farm as consideration of the farm and the payment of $3,000 in money.    Defendant testified that he had informed plaintiff and other agents at some time in the summer prior to the sale that he would pay no commission to any agent on this sale unless the farm should sell for $22,500.    The trial court held that this amounted to a revocation of the alleged agreement between plaintiff and

defendant, and that it precluded recovery upon the alleged agreement.

There is nothing to show that plaintiff expressly assented to any modification of his agreement.   If any modification or cancellation of the agreement took place it must have been inferential and on the ground, as held by the trial court, that such declaration by the defendant constituted a revocation of the contract found by the jury.   To give proper significance and effect to this evidence of defendant the fact must be kept in view that he denied having made any such contract as the jury found was made in the preceding February or March. He could not have intended to revoke any contract, for he claims that none ever existed.   Moreover, there is nothing showing that plaintiff understood it as a revocation of his contract.   These circumstances fall short of constituting a revocation.   They are entirely insufficient to cancel the obligation after plaintiff, by furnishing the name of a probable purchaser of this farm, had acted and performed his part of it. The fact that the negotiations were protracted and delayed until the month of July did not amount to an abandonment of the contract.   There was no express limitation of time, and the lapse of time between the agreement and the sale was not so great as to warrant the conclusion that the contract had been abandoned by the parties.

It is further contended that plaintiff must fail in his recovery because the farm was sold to Mr. Duffy and not to Mr. Bondwell.   While the details of the arrangement between Mr. Duffy and Mr. Bondwell are not fully disclosed, sufficient appears to show that the defendant sold Mr. Bondwell the farm, although the payments for it and the sale of Mr. Bondwell's bonds were arranged by defendant and Mr. Duffy, and that as part of the transaction a formal transfer of the title to the land was made to Mr. Duffy instead of to Mr. Bondwell directly.   Defendant dealt exclusively with Mr. Bondwell as purchaser, and Mr. Bondwell went into immedi-

ate possession.    Mr. Bondwell still has possession under this
transfer.    Upon these considerations we must hold that the
court properly awarded judgment of nonsuit on the first al-
leged cause of action, but erred in directing judgment in de-
fendant's favor on the second cause of action.    Upon this
plaintiff was entitled to judgment in his favor.

*By the Court.*—The judgment is reversed, and the cause
remanded with directions to award judgment as indicated in
the opinion.


CASSODAY, C. J., took no part.