SEXTON and another, Respondents, vs. GOODRICH, Appellant.

*February, 21—March 19, 1907.*

*Appeal: Review of evidence: Real-estate brokers: Commissions: Procuring cause of sale.*

1. The supreme court will reverse a judgment based upon the verdict of a jury only when such verdict is wholly unsupported by credible evidence or when some error of law has been committed.

2. A broker cannot be said to be the procuring cause of a sale of real estate merely because he invites to it the attention of another who is already in active negotiation for its purchase, nor because he mentions to the owner as a possible purchaser one with whom the owner is already treating, when the final purchase results from a continuation of such pre-existing negotiations unaffected by the broker's act.

APPEAL from a judgment of the circuit court for Milwaukee county: LAWRENCE W. HALSEY, Circuit Judge. *Modified and affirmed.*

Action for agreed two per cent. commission for effecting sale of two parcels of land by the plaintiffs at the employment of the defendant, one known as the Twenty-fourth street property and the other as the Grand avenue property. The defenses were, first, as to both parcels, that defendant acted only as agent for the respective owners in employing plaintiffs and did not become liable; and, as to the Twenty-fourth street property, a further defense that plaintiffs had agreed to accept in full payment of their commission all they could obtain above $1,000 for a certain other lot received in trade for the property sold. As to the Grand avenue property, a further defense was denial that plaintiffs sold or procured the sale of the property.

A special verdict was taken finding that the Twenty-fourth street property belonged to Nellie A. Goodrich, wife of defendant, and the Grand avenue property to Julia A. Teesdale, a relative of his; that defendant did not act and contract with the plaintiffs openly as the agent of either of said owners, nor did the plaintiffs know when they executed employment that the property was owned otherwise than by defendant. They also found, as to the Twenty-fourth street property, that no agreement had been made to accept in satisfaction of their commissions all that they might realize over $1,000 for another lot; and, as to the Grand avenue property, they found that the sale to Uihlein Bros. was effected through the efforts of the plaintiffs, and that the amounts of their commissions

so earned were, respectively, $110 for the Twenty-fourth street property and $900 for the Grand avenue property.

Defendant moved that the verdict be set aside and a new trial granted, for the reason that the answers to each of the disputed questions were "contrary to the preponderance of the evidence," which motion was overruled and judgment entered in favor of the plaintiffs upon the verdict, from which defendant appeals.

*Charles D. Mann,* for the appellant.

For the respondents there was a brief by *Stover & Stover,* and oral argument by *Paul Stover.*

Dodge, J. The single assignment of error is the overruling of defendant's motion to set aside a verdict and grant a new trial because the answers are against the preponderance of the evidence. This discloses an unaccountable confusion in counsel as to the questions which will be considered in this court on appeal. If there is no fault with the verdict other than that the preponderance of the evidence has been ignored by the jury, and the trial court, upon motion for that purpose, has refused to disturb it, it is futile to bring the case here on appeal. This court will reverse a judgment based upon the verdict of a jury only when such verdict is wholly unsupported by credible evidence or when some error of law has been committed. This policy has been declared so often that it ought not to be necessary to reiterate it. *Peat v. C., M. & St. P. R. Co.* 128 Wis. 86, 107 N. W. 355; *Bazelon v. Lyon,* 128 Wis. 337, 107 N. W. 337.

Counsel, however, did contend, at least upon the oral argument, that the findings of the jury had not even the support of any credible evidence and were opposed to uncontradicted evidence. We have therefore gone at large into the evidence, and find that, with one exception, the answers in the special verdict have the support of at least some evidence which, after approval of the verdict by the trial court, we can-

not say is incredible. The one exception is the answer to the eleventh question: "Was the sale to August Uihlein *et al.* of the property known as 619 Grand avenue, aforesaid, effected through the efforts of the plaintiffs? *Answer:* Yes." The testimony upon which this answer must have rested is brief and, in the main, without dispute as to specific facts. Wherever there is conflict we, of course, accept the testimony of the plaintiff *Frey* himself. He states that some time in September *Mr. Goodrich* first spoke to him about the Grand avenue property, and it was then listed on his book at a price of $52,000, commission two per cent. The terms of this contract were, in effect, as he states, as follows:

"I was to sell this property for $52,000, with two per cent. commissions. Nothing was said about the commission I was to get if there was less offered than $52,000. I telephoned in the evening to Mr. Henry Uihlein, and he told me to telephone to Joseph Uihlein. I telephoned to Joseph, and he said the price was too high and they would not consider it. *Mr. Goodrich* came in a few days later and I told him what they said, and he said, 'Are you sure they want it?' And I said, 'I think they will buy it if the price is right.' Some two weeks later I said he would have to reduce the price, and finally I said he would have to go and see the brewery personally."

Some time later, he says, he learned that it had been sold to the Uihleins for $45,000. At another place he states that Joseph Uihlein's response was that the price was too high, but if the price was right he would consider the purchase of it; further, that he never spoke again to any of the Uihleins in regard to it. On the other hand, it appeared, without dispute, that for more than thirty days prior to the employment of the plaintiffs one Dixon, in association with another real-estate firm, had had the property in hand for sale, and at that time was in active negotiation with Mr. August Uihlein, who had charge of all the real-estate business of his firm. He testified that the property was originally offered to him by Mr.

Dixon, who afterwards brought *Mr. Goodrich* to him, and that, after negotiation, a price was agreed upon and the deal consummated; that he did not know Sexton & Frey in any way, shape, or manner in the deal; that Joseph Uihlein's only contact with the business was in consummating the deal and bringing the papers into shape. Joseph Uihlein testified that, after the deal was negotiated, he was brought into contact with the matter substantially as August Uihlein had testified; that while the negotiations were on with Dixon he had a telephone from *Frey;* that, because of the negotiations with Dixon, he told *Frey* the price was too high, simply to say something so as not to have further negotiation with him.

"Mr. August Uihlein dealt with Dixon and *Goodrich.* I only came in on the evening when *Goodrich* came up to our office. That telephone is all I have had to do with *Mr. Frey.* The negotiations with Dixon had gone on for a considerable time previous."

Mr. Dixon gives a somewhat detailed statement of his negotiations with Mr. August Uihlein preceding the interview between defendant and plaintiff *Frey.* His visits with Uihlein were weekly and his interviews with *Goodrich* frequent; *Goodrich* demanding $50,000 and the Uihleins declining to pay so much or to name a price. Whereupon Dixon advised *Goodrich* to go and see Uihlein, which he did, and, as is undisputed, after some negotiation, agreed on a price of $45,000, and telephoned to Mr. Dixon's firm, who closed the trade, which was finally consummated some time the last of January, 1904.

We are forced to the conclusion that this evidence shows beyond dispute, and beyond any reasonable construction or inference to the contrary, that the sale of the property was due entirely to the negotiations of Mr. Dixon with Mr. Uihlein and the interviews between the latter and *Goodrich* brought about by Mr. Dixon, and that the simple act of the plaintiff *Frey* in telephoning to Uihlein that the price of the property

was $52,000 and asking him if he wanted it had no effect whatever in leading to or inducing the sale. A broker cannot be said to be the procuring cause of a sale of real estate merely because he invites to it the attention of another who is already in active negotiation for its purchase, nor because he mentions to the owner as a possible purchaser one with whom the former is already treating, and when, as here, the final purchase results from a continution of such pre-existing negotiations unaffected by the broker's act. *Francis v. Eddy,* 49 Minn. 447, 52 N. W. 42; *Wylie v. Marine Nat. Bank,* 61 N. Y. 415; *Ward v. Fletcher,* 124 Mass. 224; *Brown v. Shelton* (Tex. Civ. App.) 23 S. W. 483; *Burdon v. Briquelet,* 125 Wis. 341, 104 N. W. 83; *Burd v. Webster,* 128 Wis. 118, 121, 107 N. W. 23.

The result of these conclusions is that the recovery of the $110 as commissions upon the sale of the Twenty-fourth street property cannot be disturbed, but that, upon the evidence adduced upon the trial, the plaintiffs are not entitled to recover the $900 awarded them in the judgment as commissions upon the sale of the Grand avenue property. The latter issue seems to have been fully and completely tried, upon full testimony from all parties to the transaction, and no reason is apparent why the rights of the parties should not be finally declared as a result of such trial, instead of subjecting them to a new trial which must, beyond reasonable doubt, eventually bring them to the same result. Such is now the policy of this court declared by Rule 58.

*By the Court.*—The judgment is modified by reducing the damages therein to $110 as of the date of the judgment, and as so modified is affirmed; appellant to recover costs in this court.