BUROFF, Appellant, vs. BERGMANN, Respondent.

*November 5—December 2, 1919.*

*Brokers: Interest of principal in property sold: Commission: Procuring cause: Bringing parties together: Question for jury: Suspension of negotiations: Principal's knowledge of broker's efforts.*

1. Where a broker is employed to secure a purchaser for a farm, no price being fixed by the seller, and the broker introduces or refers the seller to one with whom the latter makes a deal, he is entitled to his commission, where it appears that his act in bringing the seller and purchaser together is the efficient procuring cause of the sale.

2. In a broker's action for commission for having brought the defendant and the buyer together, the question whether the broker was the efficient procuring cause of the deal finally consummated was, under the evidence, for the jury.

3. The trial court could not say as a matter of law that suspension, followed by renewal within a month, of negotiations between the seller and a buyer procured by plaintiff, resulting in the consummation of a deal which, though not exactly, was substantially the deal under consideration when negotiations were suspended, eliminated the broker as the efficient procuring cause of the sale.

4. The evidence in this case is *held* sufficient to justify a finding by the jury that the defendant had knowledge that the party to whom he sold had had prior negotiations with plaintiff, though plaintiff did not expressly state to defendant that such party was a prospective purchaser.

5. The former owner of a farm, who retained a substantial interest in it, though he had previously conveyed the farm to his son, first taking a mortgage back but later releasing the mortgage and accepting the son's personal note, could lawfully

contract to pay a broker a commission if he should procure a purchaser for the farm, the son becoming too ill to work it so that it was necessary to sell.

APPEAL from a judgment of the county court of Dodge county: WILLIAM H. WOODARD, Judge. *Reversed.*

Action by real-estate agent to recover commission for the sale of a farm. Sometime prior to the 6th day of March, 1917, *August Bergmann,* being the owner of a farm in Dodge county, Wisconsin, conveyed it to his son for a valuable consideration, taking back a mortgage for $10,000. Subsequent thereto, and to enable the son to raise money on the farm, *Bergmann* released the $10,000 mortgage. The son paid him $2,400 and he took the son's note for $7,600, without any security. There is evidence that the defendant claimed an interest in the farm to the extent of $7,600. On the 6th day of March, 1917, the son's health was such that he could not continue the management of the farm, and it became desirable, if not imperative, to dispose of the same.

The complaint alleges that on the 6th day of March, 1917, the defendant engaged the plaintiff to procure a purchaser for said real estate, either for cash or trade. The evidence tends to show that the defendant listed the property with plaintiff at a cash price of $18,000, or $20,000 or $22,000 in trade, and agreed to pay plaintiff a commission of two per cent. if he produced a purchaser with whom a deal could be made. *Buroff,* the agent, made no headway in disposing of the farm until January, 1918, when one Knowlton, another real-estate dealer in Watertown, where *Buroff* was in business, came into his office, and, during a conversation, learned that *Buroff* had the *Bergmann* farm for sale. Knowlton was desirous of acquiring it, and suggested that a trade, satisfactory to *Bergmann,* might be arranged. *Buroff* took Knowlton to *Bergmann.* This was the first time *Bergmann* had met Knowlton. Negotiations for a trade were opened, and a proposition, which was called

a three-cornered deal, proposed. *Bergmann,* however, was not interested, and nothing came thereof.

There was a mortgage of $6,000 on the farm. Knowlton had two properties in Watertown, a house and lot on Emerald street and another on Western avenue. He also had a real-estate mortgage of $2,200. The next day, or very soon after the first meeting, Knowlton and *Buroff* saw *Bergmann* again, and a trade was proposed which contemplated that Knowlton should take the farm, assume the $6,000 mortgage, give back a second mortgage for $6,000, assign the $2,200 real-estate mortgage which he owned, trade in either the Emerald street or the Western avenue property, and pay $800 in cash. *Bergmann* and his wife looked at the Emerald street property, but did not look at the Western avenue property, as they expressed themselves satisfied with the former. They then returned to *Buroff's* office, where the details of the proposed trade were written out, handed to the *Bergmanns,* and they took the writing away with them for consideration. A day or two later *Buroff* and Knowlton again saw the *Bergmanns* and they expressed satisfaction with the proposed trade, except that they wanted a cash payment of $1,800 instead of $800, reducing the mortgage to be given back by Knowlton from $6,000 to $5,000. This was talked over, and Knowlton wanted to turn in another mortgage which he had for $500. Nothing definite was agreed upon, however, although it seemed probable that a satisfactory deal would be arranged, and matters were left in abeyance until weather conditions permitted Knowlton to examine the farm. Neither Knowlton nor *Bergmann* talked about the trade to *Buroff* again.

The evidence tends to show that sometime during February *Bergmann* met Knowlton at the Watertown fair and *Bergmann* said to him: "Haven't you some other properties that we could trade for that farm up there which *Buroff* had nothing to do with?" Negotiations were resumed and a deal concluded by which Knowlton took the farm, assumed

the $6,000 mortgage thereon, gave back a second mortgage, for $5,000, assigned the $2,200 mortgage, conveyed a vacant lot on Twelfth street in the city of Watertown and the house and lot on Western avenue, referred to in the former negotiations, and paid $400 in cash.

This action was brought by plaintiff to recover a commission of $360. At the conclusion of the evidence the court directed a verdict against the plaintiff and in favor of the defendant, and from the resulting judgment the plaintiff brings this appeal.

*Otto Kuenzli* of Watertown, for the appellant.

For the respondent there was a brief by *Skinner & Thauer* of Watertown, attorneys, and *Clifford & Hartman* of Juneau, of counsel, and oral argument by *N. J. Thauer*.

OWEN, J. The question is whether a verdict should have been directed. In seeking to vindicate the action of the court in this respect, respondent contends that in order to entitle plaintiff to recover it was incumbent upon him to prove that he produced a purchaser who was ready, willing, and able to pay $18,000 for the farm. The rule is familiar that where a broker undertakes to sell at a price fixed by the owner, in order to entitle him to compensation it must appear that he produced a purchaser ready, willing, and able to pay such price. According to plaintiff's testimony, however, that was not his contract in the instant case. His version of the contract is that he was to receive a commission of two per cent. if he produced a purchaser to whom the farm was sold or traded. It is no doubt true that if he had produced a purchaser for the farm at $18,000 in cash he would have been entitled to recover upon his contract. That, however, was not all there was to the contract. The defendant indicated his willingness to trade, and, upon this kind of a deal, all the plaintiff could do was to bring the prospective purchaser or trader and the defendant together, from which point the negotiations were to be necessarily

conducted by, and result to the satisfaction of, the defendant.

The rule is well settled that where a broker is employed to secure a purchaser, no price being fixed by the seller, and he introduces or refers the seller to one with whom the latter makes a deal, he is entitled to his commission where it appears that the act of the broker in bringing the seller and purchaser together is the efficient procuring cause of the sale. *Burdon v. Briquelet,* 125 Wis. 341, 104 N. W. 83; *Burd v. Webster,* 128 Wis. 118, 107 N. W. 23; *Sexton v. Goodrich,* 131 Wis. 146, 111 N. W. 206.

Under the plaintiff's version of the contract, he was entitled to recover if he was the efficient procuring cause of the deal. Whether the contract was as claimed by him, and whether he was the efficient procuring cause of the deal finally consummated, was clearly, upon the evidence, a jury question. We do not attach any importance to the fact that at the time of listing the property the defendant said he wanted $20,000 or $22,000 in trade. The cash value of any trade is a matter of mutual adjustment of prices, and by a little shrinking or puffing of value the cash equivalent of the trade is entirely within the control of the principals. A broker's commission should not be made to depend upon whether the trade, reduced to terms of cash, upon values placed thereon by the owner, amounts to any given sum. Under such a contract the broker earns his commission when he has produced a person with whom the owner makes a trade; in other words, when it appears that the broker was the efficient procuring cause of the deal consummated.

Neither was it proper for the court to assume that the suspension of negotiations and their resumption at a later time, to the exclusion of *Buroff,* by defendant and Knowlton, resulting in the consummation of a deal somewhat different from that under consideration at the time of such suspension, took the question from the jury. The court could not say as a matter of law that the suspension of

negotiations and their renewal within a month, resulting in the consummation of a deal which, while not exactly, was nevertheless quite substantially, the same deal that was under consideration when such negotiations were suspended, eliminated plaintiff as the efficient procuring cause of the sale. *Willey v. Rutherford,* 108 Wis. 35, 84 N. W. 14.

To the point that the deal as actually consummated was substantially the same as the one under consideration when negotiations were suspended, it will be noted that there was an assumption of the $6,000 mortgage, the giving of a mortgage back for $5,000, the assignment of the $2,200 mortgage, the conveyance of the Western avenue property which Knowlton stood ready to turn in as a part of the original proposal instead of the Emerald street property, and the payment of a certain amount in cash. The only really new feature of the deal as consummated was the conveyance of the Twelfth street property.

It is further contended by the respondent that *Buroff* did not inform him that Knowlton was a prospective purchaser, and that, upon the authority of *Roberts v. Harrington,* 168 Wis. 217, 169 N. W. 603, he was at liberty to deal with Knowlton directly. That case simply held that the owner was at liberty to deal directly with one whom the agent had been endeavoring to interest in the purchase of the property where the owner had no knowledge of such fact and had no reason to believe that the agent had had prior negotiations with him. In the instant case, while *Buroff* did not expressly make the statement to the defendant that Knowlton was a prospective purchaser, that fact does not conclusively negative such knowledge on the part of the defendant. The nature of the negotiations was such that, to our minds, the defendant must have been innocent indeed if he did not know that Knowlton was negotiating for the purpose of securing the farm for himself. But however that may be, there was certainly sufficient evidence

to justify a finding by the jury that defendant had such knowledge.

A further contention is made that plaintiff should not be permitted to recover because he knew that defendant's son owned, or at least held the legal title to, the farm. There is nothing to this contention. The defendant had a very substantial interest in the farm, aside from the paternal interest which he had in the welfare of his son. No reason is perceived why he could not enter into a lawful contract to pay plaintiff a commission if he should procure a purchaser therefor. To our minds the case presents a clear question for the jury.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.