### COMBES v. AYRES. (No. 8517.)

(Court of Civil Appeals of Texas. Galveston. April 16, 1924. Rehearing Denied · May 1, 1924.)

1. **Brokers** ⊚⇒86(4)—**Evidence held not to show that broker was procuring or inducing cause of sale.**

In suit for commission for procuring purchaser of timber, evidence *held* insufficient to support finding that plaintiff was procuring or inducing cause of sale.

2. **Brokers** ⊚⇒53—**Must be efficient agent or procuring cause of consummated contract of sale to recover commission.**

To entitle agent or broker to commission, it must be shown that he was efficient agent in, or procuring cause of, consummated contract of sale.

3. **Appeal and error** ⊚⇒1175(6)—**Judgment rendered for defendant, where court should have instructed jury to find for defendant on facts.**

Where court, on undisputed and admitted facts in case fully developed, should have instructed jury peremptorily to find for defendant, judgment for plaintiff must be reversed, and judgment rendered for defendant.

Appeal from Harris County Court; Roy F. Campbell, Judge.

Suit by J. K. Ayres against S. M. Combes. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Cole, Cole, O'Connor & Jones, of Houston, for appellant.

Woods, King & John, of Houston, for appellee.

LANE, J. This suit was brought by appellee, J. K. Ayres, against appellant, S. M. Combes, to recover $525 alleged to be due him by Combes as a broker's commission for procuring a purchaser for the timber situated on three tracts of land owned by Combes in San Jacinto county, Tex.

The plaintiff alleged that Combes had agreed with him that if he would procure a purchaser ready, willing, and able to purchase, and who would purchase said timber at $2.50 per thousand feet, Combes would pay plaintiff a commission of 5 per cent. of the purchase price therefor; that he was a timber estimater, and that after said agreement was made he made an estimate of said timber, estimating it to be 4,790,000 feet; that after making such estimate he called upon the Foster Lumber Company, a corporation, and offered to sell them said timber at $2.50 per thousand feet; and that, pending his negotiations with said company, Combes sold said timber to said company for $10,500, and is now refusing to pay him his commission.

The defendant answered by general demurrer, general denial, and by special plea to the effect that at the time he authorized the plaintiff to find a purchaser for his lands, he advised plaintiff that he was at that time himself negotiating with the Foster Lumber Company, and had been trying to sell said company his timber on said lands for some two years or more, and was continuing such negotiations, and that said company was his customer, and that plaintiff should not undertake to sell to said company, and that no commission would be allowed plaintiff on any sale made to it, that the sale finally made to the Foster Lumber Company was made by himself as the result solely of the long period of negotiations between himself and said company, and that said sale was not in any way, manner, or degree expedited nor assisted by anything done by the plaintiff.

The case was tried before a jury upon special issues, in answer to which they found:

(1) That at the time S. M. Combes authorized J. K. Ayres to sell the timber on his lands he did not tell Ayres that he was not to undertake to sell said timber to the Foster Lumber Company. (2) That J. K. Ayres was the procuring and inducing cause of the sale of the timber to the Foster Lumber Company.

In connection with the issues submitted, the court instructed the jury as follows:

"In connection with special issue No. 2, you are instructed that, under the agency agreement testified to in this case, the defendant would have the right to sell his timber to any

purchaser whom he might find and induce to purchase the same, and if you should find from the evidence that the defendant himself was the procuring and inducing cause of the sale that was made of his timber to Foster Lumber Company, you will answer said special issue No. 2 'No.'"

Upon the verdict of the jury and the evidence, the court rendered judgment in favor of J. K. Ayres for the sum of $525, the same being 5 per cent. commission on the sum of $10,500, for which said sum the timber was sold. From the judgment so rendered S. M. Combes has appealed.

[1] Appellant contends that the judgment rendered against him has no support in the evidence, and that, since the case was fully developed, such judgment should be reversed, and judgment here rendered for him. He insists that there was no evidence to support the finding of the jury that appellee, Ayres, was the procuring or inducing cause of the sale of his timber.

After a careful review of the entire statement of facts, we feel constrained to sustain appellant's contention.

Before appellee would be entitled to the recovery sought, it must be shown that through his efforts or services the Foster Lumber Company was procured or induced to purchase appellant's timber. It follows, therefore, if there was no such showing the judgment rendered should be reversed, it being conceded that appellee had no exclusive right to make sale of appellant's timber to the Foster Lumber Company, or to any one else, but, to the contrary, appellant reserved the right to make such sale himself, or to have agents other than appellee to make the same.

It is shown that in April, 1920, appellant, Combes, began negotiations with the Foster Lumber Company, through its manager, F. J. Womack, to sell to it some of his timber, for the sale of which appellee, Ayres, is claiming a commission in this suit. The negotiations thus begun continued by correspondence and otherwise from April, 1920, to November, 1921, resulting in the parties having come so near to agreement that appellant, Combes, construed it as a contract of sale to the Foster Lumber Company, but Mr. Womack insisted that the contract had not in fact been closed, and the negotiations between the parties were temporarily broken off. After this disagreement, and, with the matter standing as above indicated, appellant, Combes, returned to Houston from his home in Ohio, and while in Houston he saw appellee, Ayres, at the Rice Hotel, and after telling him of his efforts to sell his timber to the Foster Lumber Company and his failure to make such sale he authorized appellee, Ayres, to find a purchaser for said timber. This conversation at the Rice Hotel took place along in January or February, 1922. Appellant, Combes, testified that at the time he authorized appellee to sell his timber he told him that he had been negotiating with the Foster Lumber Company in an effort to sell it his timber and that Ayres should not try to sell to said company. Ayres denied that Combes reserved the Foster Lumber Company as his prospective purchaser, but admitted that he was told or knew of the negotiations which had been going on between Combes and Womack relative to the timber. After Ayres had been authorized to sell said timber, he went upon the lands of Combes and made an estimate of the timber thereon, estimating it to be 4,700,000 feet. In two or three months after he had been authorized to sell the timber, Ayres called on F. J. Womack, manager for the Foster Lumber Company, and offered to sell said company the timber at $2.50 per thousand feet, based upon his estimate of 4.700.000 feet. Replying to said offer, Womack told Ayres that they would not deal with him looking to the purchase of the timber; that they had made an estimate of the timber, estimating it at 3,000,000 feet, and had offered Combes $3 per thousand feet therefor on the estimate as made, and that if Combes cared to accept such offer he could do so. In the conversation Ayres told Womack that he had a man at the Rice Hotel who would purchase the timber on his estimate at $2.50 per thousand feet, and Womack told him to go sell it to this man. There was nothing more said by either party with reference to the sale of the timber. This effort on the part of Ayres to sell to the Foster Lumber Company was the end of his negotiations with Womack or any other agent of the Foster Lumber Company.

It was shown that Womack, for the lumber company, had never abandoned his purpose or intention to purchase the timber from Combes direct, if he and Combes could reach an agreement as to its value, and that the negotiations between them with reference to such purchase, which had been temporarily broken off in November, 1921, had been renewed at some time between the time Combes saw Ayres at the Rice Hotel and the time Ayres saw Womack, for the purpose of selling the Foster Lumber Company the timber, and that Womack had during this interval offered Combes $3 per thousand feet for the timber on his estimate of 3,000,000 feet, as hereinbefore stated.

Combes had, at and before the time he authorized appellee, Ayres, to sell his timber, authorized other parties to sell the same, and it was shown that one or more of such parties had been making efforts to sell the same, and that Womack knew of such efforts.

Finally, after continuous negotiations between Combes and Womack, personally and by correspondence, Combes sold his timber to the Foster Lumber Company for $10,750 in the latter part of the year 1922.

The contentions of Ayres can be clearly

shown by a statement made in his brief, as follows:

"Appellant and Foster Lumber Company, which ultimately purchased the timber, had been negotiating relative to its sale by appellant and purchase by Foster Lumber Company, from April or May, 1920, to October 27, 1921, and the 'negotiations had proved fruitless, appellant then becoming convinced he was going to be unable to make the sale. Appellant employed appellee to see what appellee could do relative to selling the timber. Appellee made large efforts to sell it on terms satisfactory to appellant, including an effort to sell it to the Foster Lumber Company. The Foster Lumber Company did not desire to have appellee, or anybody else, interfering with the situation, and refused flatfootedly to deal with appellee. Appellee told the Foster Lumber Company he could and would sell the timber to other parties, and proceeded in his attempt to do so, and it was the fear of the Foster Lumber Company that if they did not conclude the purchase from appellant that appellee would succeed in selling this timber, which the Foster Lumber Company very much desired, to other parties, which finally caused the Foster Lumber Company to conclude the purchase of the timber from appellant."

It cannot be reasonably concluded, we think, that fear on the part of the Foster Lumber Company that appellee, Ayres, would induce some other party to purchase appellant's timber was the procuring or inducing cause of the purchase of said timber directly from appellant, Combes, by said lumber company. The undisputed evidence shows that Womack, who was representing the lumber company in the proposed purchase, was anxious to make the purchase, and that he intended to continue his negotiations relative thereto, which had been going on for more than a year before appellee, Ayres, became interested, that he knew Combes was trying and intended to sell the timber and that he had agents other than Ayres trying to make such sale. Notwithstanding such knowledge, however, Womack, when approached by Ayres for the purpose of selling the timber, told him that his company had been negotiating directly with Combes for the purchase of said timber, that Combes had his offer, and that he would not deal with Ayres. It is also shown, as before stated, that in the only conversation Ayres had with Womack he told Womack that if he did not close the deal with him he had a man at the Rice Hotel who would purchase the timber, and that in reply to such statement Womack told him to go sell to his man at the Rice Hotel.

It was also shown that, notwithstanding the supposed scare Ayres gave Womack some time in April or May, 1922, Womack continued the negotiations between himself and Combes which had begun long before Ayres became interested in the sale of the timber, and that he did not close the deal with Combes until in the last days of the year 1922.

[2] However, if it should be conceded that Womack was afraid Ayres might sell the timber to some one else and that such fear hastened his negotiations with Combes, which ultimately resulted in a contract of sale of the timber to the Foster Lumber Company, still, we think, it cannot be held that such fear was the producing and inducing cause of said sale. The rule in such cases, as we understand it, is that, before an agent or broker is entitled to a commission, it must be shown that he was the efficient agent in, or the procuring cause of, the consummated contract. In other words, he must be the primary procuring cause or controlling cause. Duval v. Moody, 24 Tex. Civ. App. 627, 60 S. W. 269; English v. Realty Co. (Tex. Civ. App.) 117 S. W. 996; Goff v. Hurst, 135 Ky. 276, 122 S. W. 148; Sexton v. Goodrich, 131 Wis. 146, 111 N. W. 206; Haase v. Ullman, 148 App. Div. 40, 131 N. Y. Supp. 1050; Witt v. Byrum (Tex. Civ. App.) 135 S. W. 687.

Certainly it cannot be held, under the facts of the present case, that appellee, Ayres, was either the efficient agent in, or the procuring cause of, the sale which Combes had ultimately consummated after long negotiations between himself and the agent of the Foster Lumber Company, especially when it was shown that said agent positively refused to deal with Ayres in the matter.

Without giving the facts in the several cases cited, we here quote from them those parts supporting the rule hereinbefore announced:

Duval v. Moody:

"It is now the well-settled doctrine that in the absence of any usage or contract, express or implied, or conduct of the seller, preventing the completion of the bargain by the broker, an action by the broker for his commissions will not lie until it is shown that he has effected or procured a sale of the property, and it is not enough that the broker has devoted his time, labor, or money in the interest of his employer, as unsuccessful efforts, however meritorious, offer no ground of action, and that, where his acts effect no agreement or contract between his employer and the purchaser, the loss must be his own. In such cases he loses his labor and efforts which he staked upon success, and if there is no contract there is no reward, as his commissions are based upon the contract of sale."

See, also, Newton v. Corness (Tex. Civ. App.) 106 S. W. 893; Burch v. Hester (Tex. Civ. App.) 109 S. W. 399; Mueller v. Bell (Tex. Civ. App.) 117 S. W. 993.

Goff v. Hurst:

"The rule is that, to be entitled to a commission, a broker must be an efficient agent in, or the procuring cause of, the contract, or it is sometimes expressed he must be the primary procuring cause or controlling cause. Collier v. Johnson, 67 S. W. 830, 23 Ky. Law

Rep. 2453, and cases cited. In the case at bar Hurst was in no sense the efficient or procuring cause of the contract. At the time that Hurst saw Patton, he had been negotiating for some months with Goff for the purchase of the timber, and Goff had priced it to him at $10,000. Hurst did nothing except to see Patton and inform him that he had the tract of land for sale, and asked him to take the matter up with Goff. He gave Patton no information that he did not already have except to inform him of his agency. After telling Patton this, he did not see Patton any more and had nothing to do with the matter; but Goff went on and made the trade with Patton without any help from Hurst. To say on this proof that Hurst was the primary controlling cause of the contract would be to make the rule mean nothing and to ignore the principle on which the rule rests. On the admitted facts the court should have instructed the jury peremptorily to find for the defendant."

Sexton v. Goodrich:

"A broker cannot be said to be the procuring cause of a sale * * * merely because he invites to it the attention of another who is already in active negotiation for its purchase, nor because he mentions to the owner as a possible purchaser one with whom the former is already treating, and when, as here, the final purchase results from a continuation of such pre-existing negotiations unaffected by the broker's act. Francis v. Eddy, 49 Minn. 447, 52 N. W. 42; Wylie v. Marine Nat. Bank, 61 N. Y. 415; Ward v. Fletcher, 124 Mass. 225; Brown v. Shelton (Tex. Civ. App.) 23 S. W. 483; Burdon v. Briquelet, 125 Wis. 341, 104 N. W. 83; Burd v. Webster, 128 Wis. 118, 121, 107 N. W. 23."

[3] We think that on the undisputed and admitted facts the court should have instructed the jury peremptorily to find for the defendant, Combes.

Having reached the conclusions above expressed, it becomes our duty to reverse the judgment of the trial court, and to here render judgment for the appellant, and it is so ordered.

Reversed and rendered.