(6 App. Div. 93.)

### COLWELL v. TOMPKINS.

(Supreme Court, Appellate Division, Second Department. June 2, 1896.)

REAL-ESTATE AGENTS—COMMISSIONS—PROCURING CAUSE OF SALE.

In an action for commissions on the sale of real estate, it appeared that the property was about to be sold under a mortgage. An attorney interested in the foreclosure of the mortgage testified that the purchaser came to see him, and said that he would give a certain price if he could not get it for less. Plaintiff did not call the purchaser's attention to the property, and up to that time had had no communication with him in reference to the matter, but he had the property on his books for sale at the instance of the owner, and had told the attorney that the owner's agent had the property in charge; and the attorney communicated this information to the purchaser, who subsequently bought the premises directly from the owner's agent. *Held*, that plaintiff was not the procuring cause of the sale. Hatch, J., dissenting.

Appeal from circuit court, Westchester county.

Action by Harry E. Colwell against Maria Melissa Tompkins to recover broker's commissions on the sale of real estate. A nonsuit was granted at the close of the entire case, on the ground that plaintiff failed to prove that he was the procuring cause of the sale, and plaintiff appeals. Affirmed.

Argued before BROWN, P. J., and PRATT, BARTLETT, and HATCH, JJ.

Charles T. Terry, for appellant.
Cornelius E. Kene, for respondent.

BARTLETT, J. This action was brought to recover commissions which were claimed by the plaintiff, as a real-estate broker, for effecting the sale to one Frank W. Molloy of certain property

at New Rochelle, N. Y., belonging to the defendant, for the sum of $20,000. The learned judge who presided at the trial dismissed the complaint, on the ground that the plaintiff's efforts did not constitute the moving cause which secured the purchaser. I am satisfied that he was clearly right in this view. To demonstrate its correctness, we need not go beyond the testimony of the first witness called in behalf of the plaintiff, who was Mr. J. Addison Young, one of the attorneys interested in the foreclosure of a mortgage upon the premises which were the subject of the sale. This gentleman testifies that, when Mr. Molloy came to see him, at the very outset of the negotiations, he said, in substance, that he would give $20,000 for the property, if he could not get it for $18,000. The plaintiff did not call Mr. Molloy's attention to the property, and up to that time he had never had any communication whatever with Mr. Molloy in reference to the matter, either directly or indirectly. It is apparent, therefore, that nothing subsequently done by the plaintiff could have induced Mr. Molloy to buy, as he did buy, at $20,000; for, before seeing or hearing from the plaintiff at all, Mr. Molloy had evidently made up his mind to purchase at that figure, if he could not do better. The plaintiff can claim to recover in this action only upon the theory that he has rendered service to the defendant. To earn a commission upon the sale of real estate, the broker must prove that he was an efficient agent in bringing about the sale. McClave v. Paine, 49 N. Y. 561; Lloyd v. Matthews, 51 N. Y. 124. But in the case at bar, without any action whatever on the part of the plaintiff, of which Mr. Molloy had any knowledge, the latter was willing to pay the price for which the defendant was willing to sell. Nothing done by the plaintiff could have had any effect to change the purchaser's attitude for the benefit of the owner, because that attitude was as favorable, at the beginning of the negotiations, for the purchase, as it was when the purchase was agreed upon.

It is argued, however, that the plaintiff may be regarded as the procuring cause of the sale because, having the property on his books for sale at the instance of the owner, he had told Mr. Young that Miss Marsh, the authorized agent of the owner, had the property in charge, and Mr. Young communicated this information to Mr. Molloy, who subsequently bought the premises directly from Miss Marsh herself. In other words, the contention is that a broker employed to sell real estate earns his commission if he simply tells a friend or acquaintance who the owner is, and that friend or acquaintance in turn gives the owner's name to an intending purchaser, who thereupon goes directly to the owner and buys, without ever seeing or communicating with the broker. There may be language in some of the decided cases broad enough to afford an apparent support to this proposition, but I have found no instance in which a recovery has been sustained where the broker had done so little to bring about a sale as was done by Mr. Colwell.

It should also be observed that Mr. Young was by no means certain that Mr. Colwell was the source of the information which he

had, and which he communicated to Mr. Molloy, concerning Miss Marsh and her relation to the property. On cross-examination, Mr. Young admitted that a Mr. Underhill, about the time of Mr. Molloy's first call, had informed him that Miss Marsh had a power of attorney from the owner, and he would not swear that this was not before he saw Mr. Molloy at all in reference to the matter. When the witness for the plaintiff whose testimony is essential to supply the connecting link to take the case to the jury is no more positive than this, I think the complaint should be dismissed, unless vague possibility is to fulfill the office of proof.

In my opinion, the judgment and order appealed from should be affirmed.

BROWN, P. J., and PRATT, J., concur.

HATCH, J. (dissenting). The following reasons prevent my assenting to the views of a majority of the court:

The action is by a broker, to recover commissions upon a sale of real estate, and the disposition of the appeal rests upon the answer to be given a single question. The evidence is sufficient to show that plaintiff was employed to sell the property which Mr. Molloy, the purchaser, bought. It is undisputed that his attention was attracted to the property by an advertisement of it for sale under the foreclosure of a mortgage upon the property; that thereupon he applied to Mr. Young, one of the attorneys foreclosing the mortgage, for information concerning the property. Young informed him that plaintiff was agent for its sale. Molloy then instructed Young to see plaintiff and offer him $18,000 for the property, and that, if it could not be purchased for that sum, to offer him $20,000. Young communicated these offers to plaintiff, and the evidence tends to show that plaintiff communicated the offer to Miss Marsh, defendant's agent, who held a power of attorney from the defendant to sell the property. This transpired on Thursday. On Saturday morning following, Molloy again called upon Young to learn of the result of his offer on Thursday. Young thereupon called at plaintiff's office and found him out. Returning to Molloy, he informed him of plaintiff's absence, and that he had no answer from him. At this point in the negotiations,—I quote from Young's testimony, appearing in the record,—"Mr. Molloy then said that he thought he would go up and see Miss Marsh, who was acting for the defendant, as I understood at the time. I told him who it was to go and see. Mr. Colwell told me." On his cross-examination Young testified: "Mr. Colwell had told me that Miss Marsh had the property in charge. I think those were his words." He further testified, on cross-examination, that he could not tell positively whether he saw the power of attorney from the defendant to Miss Marsh before he talked with Molloy on Saturday or not, or whether he knew that she held such power of attorney at that time, but that he did know of it at about that time. Molloy went direct to Miss Marsh, made her the offer of $18,000, and, that being refused, he offered $20,000 for the prop-

·erty. The latter offer Miss Marsh took under advisement until Tuesday following, when she accepted the same, and the sale was made on those terms. On Monday plaintiff saw Miss Marsh for the first time, when she told him of the offer, and he urged her to accept it. He spoke about the letter which he had written, and she said she had seen it.

It is upon this testimony that plaintiff must rest his right to go to the jury. It is quite evident that he was not the instrumentality that called Molloy's attention to the property, or produced in him a mind to buy; nor did he conduct the negotiations which led to the sale. Some one of these elements are usually found present in actions of this class. Here they must all be resolved against the plaintiff. But the evidence tends to show, and the jury would have been authorized to find, that he was instrumental in bringing the parties together. He informed Young—at least, the jury would be authorized to say that he did—who the person was that was authorized to sell the property, and this knowledge, obtained by Young, he communicated to Molloy, and thereby the latter was enabled to negotiate directly with the owner, did in fact do so, and consummated a purchase. Consequently, we have the question, was this instrumentality sufficient to authorize the court to submit, and the jury to say, that plaintiff was a procuring cause of the sale? In Lloyd v. Matthews, 51 N. Y. 124, it was held that the broker was entitled to compensation if his intervention was the means of bringing the owner and purchaser together, and a sale is the consequent result, although the broker does not participate in the negotiations, and is not present at the sale. In that case the broker called the purchaser's attention to the property, and the negotiations leading to the sale were conducted by the parties without the aid of the broker. In Sussdorff v. Schmidt, 55 N. Y. 319, the broker put up signs and maps, and advertised the property. By these means the purchaser's attention was attracted to it, and, although the purchaser was introduced to the owner by another person, and the broker remained in ignorance of the whole matter until after a sale was effected, yet a finding of the jury that he was a procuring cause of the sale was upheld. The court, in disposing of the question, used this language:

"Nor is it indispensable that the purchaser should be introduced to the owner by the broker, nor that the broker should be personally acquainted with the purchaser; but in such cases it must affirmatively appear that the purchaser was induced to apply to the owner through the means employed by the broker."

In Levy v. Coogan (Com. Pl.) 9 N. Y. Supp. 534, it was said:

"If, through the instrumentality of the broker, the buyer and seller meet, and negotiations are thus opened between them, which, continuing without withdrawal by either party therefrom, culminate in a sale, * * * I can see no equitable ground in support of the claim that the broker has not been the procuring cause of the sale, and has not, for that reason, earned the commissions."

v.39N.Y.S.no.4—31

See, also, Ames v. McNally, 6 Misc. Rep. 93, 26 N. Y. Supp. 7; Gemunder v. Hauser, 7 Misc. Rep. 487, 27 N. Y. Supp. 977; Lincoln v. McClatchie, 36 Conn. 136.

Applying the principle of the cases cited, I see no reason why a question of fact was not clearly presented for submission to the jury. Molloy, the purchaser, had never met Miss Marsh, did not know her, and did not know that she had the property for sale. In order that he might purchase, it became essential that he should be placed in communication with the party authorized to sell. When he failed of communication with plaintiff, he sought the party; and he was only enabled to find her by the information imparted to him by Young, which the latter was enabled to impart by information received from plaintiff. I do not say that this is conclusive of that fact, but the jury would be so authorized to find, from the evidence, upon a case properly submitted to them. If, in fact, plaintiff communicated to Young that Miss Marsh was the person authorized to sell the property, and this was the sole basis of Young's communication to Molloy, then we can see that such information was the direct instrumentality by which the parties were brought together, and the resulting negotiations and sale constituted plaintiff the direct procuring cause.

There can be no difference, in this regard, between calling the purchaser's attention to the property, whereby a sale is consummated, and introducing or furnishing means by which the parties are brought together with a like result. The language of Church, C. J., that "it must affirmatively appear that the purchaser was induced to apply to the owner through the means employed by the broker," covers the question. The inducing cause is not, necessarily, that the broker should produce the mind to buy;—that existed here without his instrumentality;—but he must furnish the means whereby the parties meet. It would be of no moment how strong a desire existed to buy, if the party was unable to find the person of whom he could buy. It is the bringing of parties together, who are thereby enabled to deal, and who do deal, that entitles the party to commissions. Slater v. Holt, 10 N. Y. St. Rep. 257. Had plaintiff gone direct to Miss Marsh with Molloy, and introduced him, it would not be disputed but that he would have earned his commissions. How can the result be changed if it be found that the information which he gave was the means by which they met? The jury may say, in this case, that plaintiff was the instrument by which this result was accomplished.

It follows, from these views, that the judgment and order appealed from should be reversed, and a new trial ordered, costs to abide the event.