HAMM et al. v. WEBER.

(Supreme Court, Appellate Term, First Department. February 26, 1897.)

BROKERS—RIGHT TO COMMISSIONS—EVIDENCE.

Brokers employed to effect an exchange of realty are not entitled to commissions where it appears that they procured one P., who desired to make an exchange, but who could not agree with the principal as to terms; that, two months later, P. sold his property to his brother, T., who afterwards made the exchange with the principal on different terms than had been offered by P.,— and there is no evidence that the sale by P. to T. was for the purpose of avoiding payment of brokerage, except that P. was present when the exchange was made, and afterwards moved into the house which T. obtained thereby.

Appeal from city court of New York, general term.

Action by Howard D. Hamm and another against Louisa Weber. From a judgment of the city court (42 N. Y. Supp. 1126) affirming a judgment entered on a verdict in favor of plaintiffs, defendant appeals. Reversed.

Argued before DALY, P. J., and McADAM and BISCHOFF, JJ.

Nichols & Bacon (A. S. Bacon, of counsel), for appellants.

Earley & Prendergast, for respondent.

McADAM, J. The action is for brokerage in effecting an exchange of real estate. The complaint, after alleging an employment by the defendant to negotiate an exchange of her property, No. 169 East 115th street, avers that about October 12, 1894, the plaintiffs procured one Patrick Burns, ready and willing to exchange therefor his premises, No. 69 East 104th street, and that thereupon the defendant and said Burns agreed to exchange said properties. The complaint is silent not only as to the price and terms upon which the plaintiffs were employed to make the trade, but as to the price and terms at and on which the exchange was actually agreed to be made. It appears that the defendant and Patrick Burns met at the plaintiffs' office October 12, 1894; that the defendant valued her property (on which there was a mortgage of $17,000), at $24,000, and that Burns valued his (on which a mortgage of $3,500 had been given) at $9,000; that Burns said he was willing to trade even, subject to the mortgages, but the defendant said she would exchange provided he would give his property unincumbered, and take back a mortgage of $2,000 to make the equities in the different properties even. It is evident that Patrick Burns and the defendant never came nearer to an exchange than that. Mr. Wood, one of the plaintiffs, testified, however, that the defendant's proposition was accepted. This was clearly a mistake, because in this respect he was not corroborated by his partner, who was present, and he was contradicted by the defendant and Patrick Burns, as well as by all the circumstances in the case. The parties certainly separated without coming to terms, for they left abruptly; the defendant saying, according to Wood's evidence, "We'll see you later, or to-morrow." They never met to talk exchange after that interview, and the trade was apparently abandoned by the plaintiffs. About December, 1894,

Patrick Burns conveyed the 104th street property to his brother, Thomas. The latter thereafter contracted with the defendant, and on January 14, 1895, exchanged that property with the defendant for $8,000, subject to a mortgage of $5,500; taking the defendant's property at $22,000, subject to a mortgage of $17,000,—prices and terms essentially different from those proposed at the meeting of October 12, 1894. This circumstance is material as showing that up to this time the minds of the parties had never met upon the details necessary to the exchange. The plaintiffs, to prove the trade, offered in evidence the deed from Thomas Burns to the defendant, and the deed from the latter to the former. They were objected to as incompetent and irrelevant under the allegations of the pleading, but were admitted under defendant's exception. Upon the conclusion of the plaintiffs' case the defendant moved to dismiss the complaint on the ground that the plaintiffs had failed to show that the premises of the defendant in 115th street were exchanged for the premises of Patrick Burns,—in other words, that they had failed to prove any exchange between the parties alleged in the complaint,—and on the further ground that the deed by Patrick Burns to Thomas Burns was not binding upon the defendant, except upon proof by the plaintiffs that she had notice of the conveyance to Thomas Burns. The motion was denied, and an exception taken. The defendant testified that the exchange made by her was with Thomas Burns, without any intervention of the plaintiffs. Upon the conclusion of the entire case the defendant renewed her motion for a dismissal of the complaint, or the direction of a verdict for the defendant, which was denied under exception. The court thereupon sent the case to the jury, and they found for the plaintiffs.

We think the trial judge erred, and that he should either have dismissed the complaint, or directed a verdict for the defendant. There was no evidence that the conveyance from Patrick Burns to Thomas Burns was made for the purpose of defrauding the brokers. Presumptively, it was made in good faith, and without the intention of wronging any one. Patrick, who was called by the plaintiffs, stated positively that the property "was not sold in order to get out of paying the percentage." We must therefore assume that the conveyance from Patrick to Thomas was bona fide, and, on that assumption, we find Thomas Burns (not procured by the intervention of the brokers) effecting an exchange with the defendant on terms essentially different from those suggested to or by the brokers, or by either of the original principals. The plaintiffs were not entitled to brokerage upon such a transaction. In order to recover, the plaintiffs were bound to show that their efforts were the procuring cause of the exchange actually made. In Smith v. McGovern, 65 N. Y. 574, the court, in defining the term "procuring cause," held that it meant the original discovery of a purchaser by the plaintiff, together with the final closing by or on behalf of the defendant with the purchaser through the efforts of the plaintiff. See, also, Ware v. Dos Passos, 4 App. Div. 32, 38 N. Y. Supp. 673; Gerding v. Haskin, 141 N. Y. 514, 36 N. E. 601;

Colwell v. Tompkins, 6 App. Div. 93, 39 N. Y. Supp. 478. The duties of a broker upon an exchange of property are considered in an opinion filed this day in Markus v. Kenneally, 43 N. Y. Supp. 1056, to which counsel are referred; and we find, under the principles declared therein, that the evidence in .this case falls far short of establishing any right to compensation. While it is possible that Patrick Burns made the conveyance to his brother, Thomas, and that the defendant contracted with the latter, in furtherance of an unlawful design upon the part of the three, conjointly, to avoid the payment of brokerage, there is not sufficient evidence to support a finding to that effect. The fact that Patrick and Thomas are brothers, that both were present when the deeds were delivered, and that Patrick in March following moved into the house exchanged by the defendant, may seem suspicious, and give color to the charge; but the defendant is not responsible for any of these things, and they do not, in and of themselves, establish fraud against her. Upon the new trial which must be had the plaintiffs may be able to show facts which, with these circumstances linked together, may establish a satisfactory case for the jury. The trouble is that, as the proofs now stand, they do not make out a legal cause of action against the defendant. Hence there was nothing upon which a jury were authorized to pass. To hold otherwise would be tantamount to deciding that if an owner employs a broker to exchange property, and his attention is called to other property for that purpose, he cannot deal thereafter with any subsequent grantee of the other property without incurring an enforceable claim for brokerage. This would be to recognize the existence of a sort of inchoate broker's lien on the property, ready to ripen into an existing demand on the slightest provocation by the employer. If the plaintiffs had unceasingly continued their negotiations down to the time the exchange was actually effected, and had made it appear that the consummation was the result of their agency, the mere fact that the original terms were modified by the contracting parties might not have impaired their right to brokerage. Levy v. Coogan, 16 Daly, 137, 9 N. Y. Supp. 534; Gilder v. Davis, 137 N. Y. 504, 33 N. E. 599. But even this rule is insufficient to sustain the judgment upon the facts established by the record.

The judgment must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.