### SAMPSON et al. v. OTTINGER et al.

(Supreme Court, Appellate Division, First Department.   April 15, 1904.)

1. BROKERS—SALE OF REAL ESTATE—ACTION FOR COMMISSIONS—EVIDENCE.

> In an action by a broker for commissions for procuring a sale of defendants' real estate, it appeared that plaintiffs and defendants contracted that if plaintiffs produced a party willing to buy on agreeable terms defendants would pay a commission; that plaintiffs gave the name of a certain firm as possible buyers, but that the firm in question refused to have anything to do with plaintiffs as brokers, or to enter into any negotiations with them or through them; and that plaintiffs were unable to cause the firm to interview defendants relative to the property, but that thereafter defendants became acquainted with the firm in question through other brokers, and effected a sale.   *Held*, that plaintiffs were not entitled to recover commissions.

Appeal from Trial Term, New York County.

Action by Marx Ottinger and another against Samuel J. Sampson and another.   From a judgment in favor of defendants, plaintiffs appeal.   Reversed.

The action was to recover broker's commissions on a sale of real property, it being alleged in the complaint that the plaintiffs were employed by the defendants as brokers to find a purchaser of the property; that they performed the services for which they were employed, and that through their efforts a contract was made between the defendants and a purchaser of the property, and that the defendants promised and agreed to pay the plaintiffs for their services a commission of 1 per cent., which they have failed to pay. The answer, so far as the merits are concerned, is a general denial.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, PATTERSON, and INGRAHAM, JJ.

Nathan Ottinger, for appellants.
B. L. Kraus, for respondents.

PATTERSON, J.   It is evident from the record in this case that the verdict of the jury in favor of the plaintiffs is against the weight of evidence.   There is no doubt of the plaintiffs having been employed originally by the defendants to negotiate a sale of the defendants' property mentioned in the complaint, with a building loan to be made to the purchaser.   That fact is conceded by the defendants; but it is equally apparent, on the whole testimony, that the plaintiffs did not find a purchaser who agreed to terms of a contract.   The duty of a broker employed to sell property is to bring the buyer and seller into accord.   To entitle him to commissions, he must produce a purchaser ready and willing to enter into a contract on the employer's terms; and the broker is not entitled to commissions for unsuccessful efforts to effect the sale, unless the failure is the fault of the principal.   Sibbald v. Bethelem Iron Co., 83 N. Y. 378, 38 Am. Rep. 441.

It is shown by the proofs in this case that Oppenheimer, one of the plaintiffs, had conversations with one or both of the defendants with respect to the premises mentioned in the complaint, and that he stated to them that he had a party who might be willing to purchase the property, and that the defendants, or one of them, said that if he produced that party, and terms were mutually agreed upon, they would

pay him a commission. But the plaintiffs did not produce that party. They gave the name of Houpt & Son as the persons the plaintiff Oppenheimer had in mind as purchasers, but they did not produce them, successfully negotiate with them, nor bring them and the defendants into accord as to the terms of a contract. On the contrary, Houpt & Son refused to have anything to do with the plaintiffs as brokers, or to enter into any negotiations with or through them, or to entertain any proposition respecting the purchase of the defendants' property, through the agency or instrumentality of the plaintiffs.

It is clear from the testimony that the defendants never repudiated the employment of the plaintiffs, and were willing to have them continue to act, if they brought about an accord between the defendants and Houpt & Son, or induced the latter to enter into direct negotiations. But when Houpt & Son refused to deal with the plaintiffs, and would not negotiate through them or recognize them or enter into relations with the defendants through the agency of the plaintiffs as brokers, and the defendants subsequently came into relations with Houpt & Son through other brokers, it cannot be said that the defendants interfered with the plaintiffs so that the latter could not accomplish the purpose for which they were employed. The strongest evidence upon which the plaintiffs can rely is Oppenheimer's statement that Mr. Ottinger said to him: "You try to get Mr. Houpt down, whether he comes down with you or without you. I have got your principal's name, and I will protect you." The plaintiffs did not get Mr. Houpt to call upon the defendants. The defendants testified that they required that Mr. Houpt should come to them personally to negotiate respecting the terms of an agreement for a sale relating particularly to the time at which payments were to be made by the Ottingers on advances on a building loan. The statement of Mr. Oppenheimer referred to is an admission that it was his business either to bring or to cause Mr. Houpt to come to the defendants. In other words, he was to be the procuring cause of the purchaser meeting and entering into negotiations with the defendants. Houpt absolutely declined to do so on the invitation of Oppenheimer. He would have nothing to do with him, and would not entertain a transaction through his agency. This was not in consequence of any fault of the defendants, and when Houpt & Son came into the transaction through other brokers the defendants were at liberty to contract through the intervention of those other brokers. The plaintiffs failed to find a purchaser. Houpt & Son would not agree upon terms or have anything to do with the plaintiffs; and, as was said in Hay v. Platt, 66 Hun, 488, 21 N. Y. Supp. 362, the employer violates no right of the broker in negotiating directly with a proposed customer, after the broker has failed to bring such customer to specified terms, and has abandoned his efforts in that direction. Nor is he liable for a commission under such circumstances, if his independent negotiation results in a sale.

Without considering other matters urged as grounds for a reversal of this judgment, we think the verdict was clearly against the weight of evidence, and that the judgment and order should be reversed, and a new trial granted, with costs to appellants to abide the event. All concur.