SHIPMAN v. WILKESON.

(Supreme Court, Trial Term, Niagara County.    September, 1908.)

1. BROKERS (§ 53*)—COMMISSIONS—WHEN EARNED.
    To recover commissions for sale of real estate, a broker must show that he was the procuring cause of the same.
    [Ed. Note.—For other cases, see Brokers, Cent. Dig. § 74; Dec. Dig. § 53.*]

2. BROKERS (§ 53*)—CONTRACTS OF EMPLOYMENT—CONSTRUCTION.
    Under a provision in a contract employing a broker to procure a purchaser of real estate before a designated date that if the property was sold after such date on information obtained from the broker he should be paid his commissions, the broker is entitled to compensation for successful efforts in procuring a purchaser, culminating in a sale on the stipulated terms after the broker's authority to effect a sale has terminated.
    [Ed. Note.—For other cases, see Brokers, Cent. Dig. § 74; Dec. Dig. § 53.*]

3. BROKERS (§ 53*)—EMPLOYMENT—CONTRACT.
    A contract employing a broker to procure a purchaser before a designated date of real estate stipulated that if the premises were sold after such date on information from him he should receive commissions. The premises were sold subsequent to such date through other brokers for a less price. The purchaser first learned that the property was for sale through the owner's attorney advertising the same. There was nothing to show that the broker started the negotiations between the purchaser

---

and owner, nor was there anything to show bad faith on the part of the owner. *Held*, that the broker was not entitled to commissions.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 74; Dec. Dig. 53.*]

Action for commissions under a broker's contract for the sale of real estate by Charles D. Shipman against Ellen A. Wilkeson. Judgment of dismissal.

D. E. Brong, for plaintiff.

A. H. Martin, for defendant.

POUND, J. Plaintiff and defendant entered into a contract, dated March 7, 1906, whereby defendant employed plaintiff as her agent for the sale or exchange of her farm, located near Youngstown, in Niagara county. By the terms of this agreement defendant agreed to pay plaintiff 4 per cent. on the purchase price for furnishing a buyer or party to a satisfactory exchange for the farm before March, 1907, at a price of $20,000. The agency was not exclusive, as the contract provided that, if the farm was sold by any other party before said date, then defendant was to pay plaintiff $25 "to help cover his expenses." Defendant also stipulated that, if her farm was "sold or exchanged after said date on information obtained through your agency, I agree to pay your full commissions as above stated." The farm was sold by defendant through other brokers on September 21, 1907, to one H. C. Martin for $15,000. Plaintiff claims commissions on the purchase price. The question is what is meant by the clause in the contract which entitles plaintiff to commissions if the farm is sold after March, 1907, "on information obtained through your agency"?

By the preponderance of evidence it appears that H. C. Martin, who purchased the farm, first learned of the property and that it was for sale through the efforts of one A. H. Martin, defendant's attorney. A. H. Martin, acting under defendant's directions, advertised the farm for sale in Buffalo newspapers in November and December, 1905, and H. C. Martin called on him sometime prior to March, 1906, obtained a description of the farm, and made a proposition to exchange city property for it. His offer was communicated to defendant by A. H. Martin, but nothing came of this. A conflict of evidence arises on this point. H. C. Martin testifies that he is "almost positive" that he first learned of the farm, and that it was for sale, from plaintiff, and that he did not see A. H. Martin until after March, 1906; but his memory is uncertain, and his evidence as to dates conflicting. It is undisputed that on May 28, 1906, H. C. Martin called on plaintiff about the farm in response to plaintiff's advertisement. Plaintiff sent him to defendant. He saw her soon after, and made a proposition to her to exchange city property for the farm. She refused to entertain the proposition, and H. C. Martin then gave up altogether the idea of securing the farm, because he could not trade his city property for it. Afterwards, in the fall of 1907, almost 16 months later, when H. C. Martin had sold his city property and was again looking for a farm, he met defendant, and after some conversation

with her about the purchase of her property she sent him to Fenwick & Spiedel, real estate agents in Buffalo, who then had the agency to sell the premises, and through them he made the purchase.

In order to recover commissions for sale of real estate, the broker must establish that he was the procuring cause of the sale, or, in other words, that his acts drew the purchaser's attention to the property and led to negotiations resulting in a purchase. Sampson v. Ottinger, 93 App. Div. 226, 87 N. Y. Supp. 796; Colwell v. Tompkins, 6 App. Div. 93, 39 N. Y. Supp. 478, affirmed 158 N. Y. 690, 53 N. E. 1124; Cords v. Ruth, 115 App. Div. 568, 100 N. Y. Supp. 1043; Rae Co. v. Kane, 121 App. Div. 494, 106 N. Y. Supp. 47. The only valid purpose of the stipulation in question must be to protect the broker from loss of compensation for successful efforts in procuring a purchaser, culminating in a sale on the stipulated terms after the broker's authority to effect a sale has terminated. It is a shield to protect the agent, not a sword to injure his principal.

It cannot be said that plaintiff's acts or any information obtained from him led to the negotiations which resulted in the purchase of the property by Martin. I have found that the original information that the property was for sale came to the purchaser from A. H. Martin; but, even if the original information came from plaintiff, he failed to bring the parties to an agreement, or even to start them on the road to an agreement. If plaintiff had brought the parties together before March, 1907, and the sale had resulted after that date as the direct and proximate result of his efforts, it would seem that he would be entitled to his commissions under the contract; but the negotiations between defendant and the purchaser, brought about through plaintiff's efforts, were entirely terminated long before March, 1907, and negotiations were not renewed by the parties until six months after that date, and then wholly independently of the plaintiff and on a different basis. Bad faith on the part of the defendant is wholly lacking, nor has she reaped the fruits of plaintiff's labors. During the time that he had the authority to sell the farm she never consented to sell for less than $20,000, and he practically admitted that he could not find a purchaser for her at that price.

Plaintiff was not, directly or indirectly, instrumental in procuring a purchaser ready, willing, and able to purchase the premises upon the terms fixed by defendant. While I find no case exactly in point, all the authorities lead irresistibly to the conclusion that he is not entitled to recover in this action. To decide otherwise would be to hold that plaintiff would be entitled to full commissions on $20,000, or at least on the purchase price, if the defendant at any time, however remote from March, 1907, sold the farm on any terms to any person who had between March, 1906, and March, 1907, obtained to defendant's knowledge, information from plaintiff's agency that the farm was for sale. To so hold would seem to be unconscionable. Cords v. Ruth, 115 App. Div. 568, 100 N. Y. Supp. 1043, and cases cited supra.

Defendant is entitled to judgment dismissing plaintiff's complaint, with costs. Prepare decision accordingly.