---

HAASE v. ULLMAN.

(Supreme Court, Appellate Division, First Department. December 1, 1911.)

1. BROKERS (§ 56*)—COMMISSIONS.

A broker, employed to procure a purchaser of real estate, spoke about the property to a third person, whose attention had been previously called thereto. The third person was unwilling to deal with the broker and his associate, and they could not have made a sale to him; but he, through his agent, dealt directly with the owner and purchased the property. The owner at the time of the sale knew that the broker had offered the property to the third person, but did not know of the details of the broker's operations. *Held*, that the broker had not earned commissions, be-

cause he was not the procuring cause of the sale, and the failure of the owner to promptly notify the broker of a sale was immaterial.

· [Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 85–89; Dec. Dig. § 56.*]

2. BROKERS (§ 55*)—COMMISSIONS—WHEN EARNED.

Negotiations by a broker, employed to procure a purchaser, with agents of one who subsequently purchased the property, are not equivalent to negotiations with the purchaser, where the agents had no authority to represent or act for the purchaser.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 82–84; Dec. Dig. § 55.*]

Appeal from Trial Term, New York County.

Action by Emil R. Haase against Samuel Ullman. From a judgment for plaintiff, entered on the verdict of a jury, and from an order denying a new trial, defendant appeals. Reversed, and new trial granted.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, SCOTT, and MILLER, JJ.

Benjamin N. Cardozo, for appellant. ·
J. Aspinwall Hodge, for respondent.

SCOTT, J. Appeal from judgment for plaintiff, entered upon a verdict and an order denying motion for a new trial in an action for broker's commissions. The plaintiff sues for a commission upon the sale for defendant of a parcel of property in Chicago to the Chicago University. It is conceded that plaintiff did not actually effect a sale, and that he never brought the parties together in agreement upon a price. His claim is that he was the "procuring cause" of the sale, which was actually consummated by another broker.

[1] Plaintiff had had charge of the property, in the way of renting and collecting rents, since 1889. Defendant acquired the property in 1906, and at once instructed plaintiff to try to find a purchaser. He also placed the property with several other brokers for sale. His announced price was $250,000, but it was understood generally that he would take something less, although no definite lower figure was fixed until the actual sale. Plaintiff associated with himself another broker, named Farrar, who was more familiar with that class of property. They offered the property to a Mr. Ryerson, a rich investor, went through the buildings with Ryerson's secretary, a man named Dodge, and furnished a statement of the leases, rentals, etc. Ryerson finally declined to consider the proposition. After Ryerson had declined to buy the property, plaintiff's attention was turned to the Chicago University. One Wallace Heckman was the counsel and business manager of the University. He had in his office a clerk, or, as it is called, "assistant," one Springer. Heckman had broad authority to act for the University in the matter of buying and dealing with its property. Springer had no authority from the University. Plaintiff and Farrar had several interviews with Dodge and Springer, neither of whom had any authority to represent the University. The

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ultimate purpose was to get at Heckman and lay the proposition before him.

In February or March plaintiff obtained an interview with Heckman, who stated that he could not give an answer at that time, and asked for certain particulars. This is the only interview that plaintiff claims to have had with Heckman. The latter denies that he met plaintiff in March, 1907, and says that he did not meet him until after he had sent another broker to New York to negotiate a purchase. It had, however, come to Heckman's knowledge that the Ullman property was for sale, and Farrar's name was mentioned as broker in connection with it. The relations between Heckman and Farrar seem to have been strained, and plaintiff expresses the conviction that Heckman would not treat with plaintiff and Farrar, and that they could not have sold to him. In February, 1907, Heckman mentioned to another broker that he was interested in water front property, and the broker mentioned the Ullman tract as one that was on the market. Heckman asked this broker (Gould) to obtain particulars of the property, which was done. In April Heckman authorized Gould to go to New York and buy the property at not to exceed $215,000, which he did; defendant agreeing to pay a commission of $4,000. Defendant knew at the time that plaintiff had offered the property to the University, and had had what the plaintiff called a "nibble"; but he does not seem to have known any of the details of plaintiff's operations. This is absolutely all there is of plaintiff's case. It seems to us that it is absurd to permit a recovery to stand. Plaintiff did no more towards effecting the sale than every broker does every day. He spoke to Heckman about the property and gave him some figures. Heckman had already had his attention called to the property and was considering it. He was unwilling to deal with plaintiff and Farrar, and they could not have made a sale to him.

Plaintiff relies upon a line of cases of which Sussdorff v. Schmidt, 55 N. Y. 319, is a leading one, in which a broker has been held to be entitled to a commission, if he is in fact the procuring cause of the sale, even though he did not actually bring the parties together and was not present when the sale was consummated. That a broker may under such circumstances be entitled to compensation is not to be doubted, but to justify a recovery in such a case it must be made abundantly clear that the broker was the efficient agent or procuring cause, not alone of directing the purchaser's attention to the property, but of effecting the sale. He must not only find the purchaser, but the sale must proceed from his efforts acting as broker. In short, it must affirmatively appear that the purchaser was induced to apply to the owner through the means employed by the broker. Wylie v. Marine Natl. Bank, 61 N. Y. 415. In the present case nothing of this sort appeared. It is not even at all certain that it was plaintiff who first brought the property to Heckman's attention. The latter says that it was not, and it is in evidence that the property had been in the market for years, and that Farrar, plaintiff's associate, had himself offered it to a large number of real estate investors. Furthermore, the fact, testified to by plaintiff, that Heckman was so prejudiced

against Farrar that plaintiff and Farrar could not have effected a sale to the University, is a complete answer to the present claim. Sampson v. Ottinger, 93 App. Div. 226, 87 N. Y. Supp. 796. The failure by defendant to promptly notify plaintiff that he had sold the property is of no significance, since plaintiff never produced a purchaser willing to buy at defendant's price. A very careful reading of the evidence convinces us that the plaintiff made out no case for the consideration of the jury and that the complaint should have been dismissed.

[2] Having arrived at that conclusion, it is unnecessary to discuss the alleged errors on the part of the trial court to which defendant invites our attention, further than to say that in our opinion it was error to refuse to charge the requests modeled upon the opinion in Sampson v. Ottinger, supra, and that the jury should have been instructed that negotiations with Dodge and Springer, neither of whom had authority to represent or act for the University, were not equivalent to negotiations with the University. The counterclaim was, as we think, rightly dismissed.

The judgment and order appealed from must be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.