GEORGE H. TREADWELL, Respondent, *v.* IRVIN J. TRUESDELL, Appellant.

Third Department, November 15, 1923.

**Principal and agent — action by broker for commissions on sale of farm — rival agent who had farm listed, first called purchasers' attention to it — purchasers without notifying broker bought farm through rival agent — broker cannot recover.**

A real estate broker is not the procuring cause of the sale of a farm so as to entitle him to recover commissions, where it appears that he did not have the exclusive agency, and that the purchasers, without notifying said broker who had called their attention to the farm, but had not introduced them to the owner, bought the farm through a rival agent who had first called their attention to it.

APPEAL by the defendant, Irvin J. Truesdell, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Broome on the 14th day of February, 1922, upon the verdict of a jury, and also from an order denying the defendant's motion for a new trial made upon the minutes.

*Hinman, Howard & Kattell [Archibald Howard* of counsel], for the appellant.

*Mangan & Mangan [Thomas J. Mangan* of counsel], for the respondent.

MCCANN, J.:

The action was brought for the recovery of certain commissions alleged to be due the plaintiff from the defendant on the sale of the defendant's real estate.

The plaintiff is a real estate broker in the city of Binghamton, N. Y., and the defendant, at the time the alleged cause of action

arose, was a farmer residing near that city. Some two or three years before the time in question, according to the plaintiff's version, the defendant had listed his farm for sale with the firm of which the plaintiff was then a member. It does not appear that the plaintiff had actively tried to secure a purchaser for this farm, but on April 12, 1921, he, together with an employee named Shotwell, took some people by the name of Rolinson to look at another place known as the Pierson farm. While on that trip Mrs. Rolinson asked the plaintiff if he had any property for sale in the neighborhood of West Colesville, and he mentioned the farm of the defendant. The Rolinsons said they knew of Truesdell but had never seen his farm. They asked the plaintiff a number of questions about it, particularly regarding the price, size of farm, stock and tools, and after giving them such information as he had, he promised to see the defendant and get them full information regarding the farm, personal property and terms of sale.

In the afternoon of the same day the plaintiff went to the defendant's farm, reminded him of the former listing and arranged for a listing at $5,500, with ten per cent commission. He also told the defendant the name of his prospective customer and the terms of the sale were discussed, including the manner of paying the purchase price, the amount of cash required and whether the defendant would accept a mortgage in part payment. It was then agreed that the plaintiff should bring the prospective purchaser to defendant's farm for further negotiations. The defendant informed Treadwell that he had given no other listing, except one to the Strout agency which had been withdrawn. The defendant's version of this conversation and agreement differs from that of the plaintiff, but in view of the verdict of the jury we have accepted that of the plaintiff throughout, where there is any conflict. Treadwell then returned to Binghamton and arranged to take Rolinson to see the farm two days later, after telling him the result of his conversation with Truesdell. On the following day he was informed by telephone that the Rolinsons did not wish to go to the Truesdell farm because they had purchased some other property. The plaintiff had no other relations with the Rolinsons. He never introduced them to the defendant as they refused to go with him. The farm was actually sold to Rolinson and a Mrs. Webster, his mother-in-law, on April thirteenth, the day before Treadwell was to take them there and the date on which Rolinson informed him they did not wish to go. On the evening of April twelfth, after returning from the trip with the plaintiff, Mrs. Rolinson called one Baxter by telephone and asked him to take them to see the farm, which he did. Baxter had

worked for the Strout agency, which listing Truesdell had said was withdrawn, and about a week before this had given Mrs. Rolinson a printed list of farms including this one, and had pointed out to her the description of Truesdell's farm and checked it; therefore, Mrs. Rolinson knew of the Truesdell farm before she met Treadwell. Her explanation was that she preferred to deal with Baxter. The defendant was surprised to see the Rolinsons with Baxter instead of Treadwell, but concluded the sale for $5,250 with a five per cent commission to Baxter. It is ten per cent of that amount which the plaintiff claims and the jury has awarded. The sole problem for the jury's consideration was whether Treadwell or Baxter was the procuring cause of the sale. There is no question of exclusive listing; it is not claimed by either agent. Truesdell's ideas of listing seem to have been rather vague, but he had undoubtedly authorized Treadwell to bring Rolinson, regardless of whether or not there was a former agreement. The jury accepted the plaintiff's story on that proposition. The defendant concluded the sale through Baxter and ratified anything which may have been previously unauthorized. If Treadwell had endeavored to bring the parties together, failed and broken off negotiations he could not recover, even though the sale was subsequently made between them. " The duty he undertakes, the obligation he assumes as a condition of his right to demand commissions, is to bring the buyer and seller to an agreement. * * * He [the broker] may have introduced to each other parties who otherwise would have never met; he may have created impressions which, under later and more favorable circumstances, naturally lead to and materially assist in the consummation of a sale; he may have planted the very seeds from which others reap the harvest; but all that gives him no claim. It was part of his risk that failing himself, not successful in fulfilling his obligations, others might be left to some extent to avail themselves of the fruit of his labors." (*Sibbald* v. *Bethlehem Iron Co.,* 83 N. Y. 378, 381, 383. See, also, *Miller* v. *Vining,* 112 App. Div. 304.) On the other hand, if Treadwell had interested the parties and been the means of bringing them together and then the owner or another agent had taken it from his hands and concluded it, he would be entitled to his commissions. He would have been the procuring cause, even though he had not introduced the parties, as in this case, and even though the terms were changed or the purchaser not known as the broker's customer. (*Southwick* v. *Swavienski,* 114 App. Div. 681; *Sussdorff* v. *Schmidt,* 55 N. Y. 319.) The case of *Sampson* v. *Ottinger* (93 App. Div. 226) is very similar to this one. There the prospective purchaser refused to negotiate through the broker

who had authority from the seller but afterward purchased directly from the seller. A distinction between that case and the instant case is that the plaintiff had abandoned his efforts but it is analogous on the one point that the purchaser refused to deal through the plaintiff. In the case at bar, however, it is neither the one nor the other, but is complicated by another agency working more or less simultaneously. Accepting the plaintiff's story as true, so far as it goes, and supplementing it with that of the defendant and Baxter, it appears that the latter called the Rolinsons' attention to the farm. Treadwell then did so again a week later and Baxter concluded the sale the following day at Mrs. Rolinson's instigation. On these facts it is impossible for Treadwell to have been the procuring cause. Baxter had shown the Rolinsons the description and marked it for them. Both of them testified that they had seen it and that Rolinson was the one who mentioned it to Treadwell, although he claims to have spoken of it first. Treadwell then saw the defendant and arranged to take the purchasers to the farm, but that same evening the Rolinsons decided to deal through Baxter, called him and asked him to take them there. Even if Treadwell did call their attention to it on that day, he was no more than a secondary or exciting cause. It is said in *Lord* v. *U. S. Transportation Co.* (143 App. Div. 437, 455, 456): " It may well be  *  *  *  that the plaintiff's call  *  *  *  *expedited* their coming together; but it was inevitable in the circumstances that they would meet with respect to this proposition even had the plaintiff not intervened to precipitate it."

Baxter cannot be considered as having dropped the sale. He had given the Rolinsons a list to go over and when they decided to see this farm they at once called him. Perhaps it cannot be said, as in the *Lord* case, that " they would meet with respect to this proposition even had the plaintiff not intervened to precipitate it," but such a meeting did not need to be inevitable. It may have been a purely personal preference with Mrs. Rolinson, but that is beside the point and is analogous to the situation in *Sampson* v. *Ottinger* (93 App. Div. *supra*).

We must find, then, that the plaintiff Treadwell was not the procuring cause of the sale. The judgment and order should be reversed and a new trial ordered, with costs to the appellant to abide the event.

COCHRANE, P. J., H. T. KELLOGG, VAN KIRK and HASBROUCK, JJ., concur.

Judgment and order reversed on the law and facts and new trial granted, with costs to the appellant to abide the event.