AUGUST C. NITSCH, Plaintiff, *v.* WARBURTON HALL ASSOCIATION, Defendant.

Supreme Court, Westchester County, March 4, 1927.

Brokers — real estate broker — action for commissions — evidence insufficient to substantiate allegation in complaint of alternative employment to find purchaser for real estate or for stock of corporation — plaintiff was only asked to submit such offers as he procured — plaintiff brought property to attention of third parties who subsequently brought about purchase of ninety-five per cent of stock — plaintiff's services were not procuring cause of sale where third parties induced stockholders to sell to group they represented.

Plaintiff, a real estate broker, is not entitled to recover commissions in procuring a purchaser for defendant's property, either as a direct sale or as a sale of the entire stock issue of the corporation, in the absence of evidence showing that plaintiff was ever asked to procure a purchaser at any fixed price or that his

18

services were the procuring cause of the sale thereof, where the evidence shows that plaintiff interested third parties in the property, but that they subsequently induced individual stockholders of the corporation to sell ninety-five per cent of the corporate stock to a group represented by said third parties. Not only does the proof fail to show that plaintiff suggested purchasing either defendant's property or the stock issued by it to any of the purchasers, but no purchaser of defendant's property, conforming to the terms of defendant's offer, is shown to have been induced or procured by any one. Furthermore, plaintiff's failure to notify the defendant or the officer who directed him to submit any offers he procured that the aforesaid third parties were plaintiff's customers, precludes a recovery.

ACTION by real estate broker to recover commissions.

——————— ———————, for the plaintiff.

——————— ———————, for the defendant.

LYNCH, J. By consent of both parties this case was tried before the court without a jury. The action is brought to recover broker's commissions alleged to be owing for the services of plaintiff and of his associate and assignor in procuring a purchaser for the defendant's property, known as Warburton Hall, situated at 45 Warburton avenue, Yonkers, N. Y., which was defendant's only asset of any consequence. This claim is predicated upon a somewhat unusual state of facts and theory of obligation. The application to the facts at bar of the principles familiar to such actions is not free from difficulty.

The plaintiff and his assignor, Dudley F. Valentine, in the latter part of the year 1924 and the early months of 1925, were licensed real estate brokers, and were associated in business, with offices at 45 Warburton avenue, Yonkers, N. Y. The services in question were performed in part by Valentine and in part by plaintiff himself. Prior to the beginning of the action, Valentine assigned his claim to the plaintiff. The defendant is a domestic corporation, which at the time of the alleged services owned, and still owns, the real estate above mentioned.

The complaint, besides averring the foregoing facts, alleges in substance as follows:

During the latter part of the year 1924 the defendant employed Dudley F. Valentine as a broker to obtain a purchaser for defendant's premises at 45 Warburton avenue, either as a direct sale or as a sale of the entire stock issue of the defendant corporation. The purchaser to be procured was to be prepared to purchase " at a price and upon terms agreeable to this defendant." The defendant agreed to pay Valentine, for procuring a purchaser ready, willing and able to buy either the stock or the property, a fair and reasonable commission. During the months of March and April, 1925,

Valentine, acting in co-operation with the plaintiff, "procured purchasers for the said premises * * * at a price and upon terms agreeable to this defendant." After thus setting forth the employment of Valentine and the procurement of purchasers in accordance with the defendant's promise, the complaint further stated that in April, 1925, the defendant entered into a binding contract to sell the real estate in question to the purchasers so procured for a price of $125,000, and " that title and control of said real estate was agreed to be given by the defendant to the said purchasers by selling all of the outstanding capital stock of the said defendant to the said purchasers." The complaint alleges " that the reasonable and agreed value of such services so rendered by the said Dudley F. Valentine, in conjunction with this plaintiff, was the sum of thirty-one hundred twenty-five ($3125) dollars, no part of which has been paid, although the same has been duly demanded." The sum thus demanded, it may be noted, is two and one-half per cent of $125,000, the alleged selling price.

The answer denied that defendant employed plaintiff or Valentine, denied that they procured a purchaser or purchasers, and denied the making of the alleged contract of sale with such purchasers, or of any agreement that title and control should be given by the defendant to such purchasers by selling its outstanding capital stock. The answer likewise, of course, denied the allegations as to the value of the services of plaintiff and of Dudley F. Valentine.

The evidence involves no determining questions of credibility. The controversy is presented by the contrary conclusions for which the respective parties seek to find justification in a state of facts which itself is not materially disputed. There was no evidence that any one ever asked the plaintiff or his associate, Dudley F. Valentine, to find a buyer for all, or for any part, of the stock issue of the defendant company. The allegation in the complaint of the alternative employment, to find a buyer of the real estate, or of the stock, therefore, falls. Plaintiff's counsel himself makes no claim that there is any evidence sustaining the averment of the stock purchase alternative. The stock, of course, was not the property of the company itself, but of the several stockholders.

There was in September, 1924, an understanding between the secretary of the defendant company, one Henry W. Valentine, and plaintiff's associate, Dudley F. Valentine. (The two Valentines, it may be noted in passing, are not related.) Henry W. Valentine, the secretary of the defendant company, was the officer in active charge of its affairs. He was also the head of a real estate company called the Valentine-Getty Company.

Although there are some contradictions as to detail, the evidence

appears to establish that in September, 1924, Henry W. Valentine, the defendant's manager and secretary, told Dudley F. Valentine, the plaintiff's associate, that any offers which he (Dudley F. Valentine) should procure for the defendant's property would be submitted to either the officers or the stockholders of the defendant corporation, or both, and that, if a sale was made, the defendant would pay a commission of two and one-half per cent to Dudley F. Valentine. No price was fixed. All that was said was that Henry W. Valentine thought the defendant's property could be bought for $140,000 or $150,000. The evidence is definite and uncontradicted that no authority to offer the property for sale at any fixed price was extended. Following this conversation between the two Valentines, Dudley F. Valentine ascertained the income of the property and the other material details.

The plaintiff brought the property to the attention of John L. Hayes, and showed Hayes a blueprint of the premises. Hayes appeared to be interested, examined the building, and referred plaintiff to his attorney, Beaudrias. Plaintiff then had one conference with Beaudrias, and thereafter went several times to the office of Beaudrias, but did not succeed in seeing him again. Plaintiff, at his first interview with Hayes, had told Hayes that he thought the property could be bought for $140,000 or $150,000. Hayes asked him to see if he could not buy it for less than $150,000. Subsequently plaintiff informed Hayes, in substance, that the lowest price he could get was $140,000.

In the meantime, however, Beaudrias, without disclosing his purpose to the plaintiff, was obtaining options from the stockholders of the company for the sale of their stock at the purchase price of $100 per share. There were in all 1,200 shares of the company's stock issued and outstanding. Pursuant to the option agreements referred to, 1,065 shares were purchased from the original stockholders and transferred to three persons, who had become interested in the purchase at the instance of Hayes or Beaudrias. The three persons referred to were William W. Farley, who took 445 shares, Vincent Farley, who took 150 shares, and Charles R. O'Connor, who took 470 shares. Besides these, Beaudrias or Hayes, or the persons whom they introduced, purchased 79 shares more, making a total of 1,144 shares, or 56 shares less than the entire stock issue of the company. Hayes himself received 16 shares of the company's stock, but this he got from William W. Farley.

It does not appear whether or not these 16 shares are a part of the 445 shares which appear from Plaintiff's Exhibit 5 (the option agreement) to have been transferred to William W. Farley. Beaudrias likewise received 16 shares of the stock of the company,

but he stated that these were qualifying shares, and that he did not consider himself the owner thereof. The transfer of the stock was accomplished through the agency of the First National Bank of Yonkers as trustee. One Robert H. Neville, who was the treasurer of the defendant corporation and a member of its board of directors, pursuant to authority previously obtained from various stockholders, had entered into an agreement with Beaudrias whereby the latter had an option to purchase the stock represented by Neville at the price of $100 per share. Beaudrias could and did exercise the option by depositing the purchase price of the stock with the bank, and thereupon the stock was transferred to Beaudrias and the persons whom he nominated to receive it.

It is fairly to be inferred from the testimony that the 1,144 shares which were delivered in consideration of money paid by Beaudrias were purchased by persons introduced by Hayes, whose attention admittedly was first drawn to the company's property by the plaintiff. In this situation, plaintiff urges that he is entitled to recover from the defendant company the sum of $3,000, two and one-half per cent of $120,000.

Plaintiff does not contend that he or his associate, Dudley F. Valentine, received authority to sell the stock, either from the defendant corporation or from the individual stockholders. His counsel contends that, through Hayes, he, as the procuring cause, produced the Farleys and O'Connor and the other persons, if any, who paid for the 1,144 shares of the defendant's stock transferred in consideration of the deposits made by Beaudrias pursuant to the option agreement. Plaintiff relies upon this purchase as showing that the purchasers so produced were ready and willing to take over the defendant's property at the purchase price of $120,000 (1,200 shares being the entire capital stock issue, and being taken over to the extent of all but 56 shares at the price of $100 per share). Counsel contends that the transfer of 1,144 shares out of a total of 1,200 shares was simply a method adopted substantially to transfer the property, in order to avoid violating the preferential option in the lease to Taylor.

Upon these facts three principal issues arise:

(1) Was the plaintiff, or Dudley F. Valentine, authorized to procure a satisfactory purchaser for the defendant's property?

(2) Was a satisfactory purchaser or purchasers for the defendant's property procured? Specifically, this question, upon the facts at bar, imports the inquiry whether Hayes, Beaudrias, the Farleys and O'Connor were procured or produced as purchasers of defendant's real estate, and whether, as such, they were satisfactory.

(3) Were the services of plaintiff, or of Dudley F. Valentine, or of

both, the procuring cause to which the introduction of such satisfactory purchasers should be attributed?

Upon the first of these issues — the question of authority to procure a satisfactory purchaser — it appears to me that the plaintiff has sustained his burden of establishing the affirmative; and that, if this were the only issue, he would be entitled to judgment.

As to the second question — whether the evidence shows a procurement of a satisfactory purchaser or purchasers for defendant's property — the situation is different. The evidence, upon the most favorable view, is plainly insufficient to establish such procurement. The men whom the plaintiff attempted to interest in the property were Hayes and Beaudrias, who was the attorney for Hayes. Neither one of them purchased the property; neither one of them, so far as appears, ever made any offer for the property; certainly no such offer was ever submitted to the defendant by the plaintiff. There was a sale, it is true, of over ninety-five per cent of the stock in the company. That stock was not the property of the company at all, was not sold by the company, and was not sold to either of the persons whose attention was drawn to the defendant's property by plaintiff. The stock purchased was the property of thirty-two or more individual owners. It was not necessary that any proposition for its purchase be submitted to the corporation, and no action of the corporation could affect the transfer of the stock of these individuals to other ownership. For such transfer the action of the individual owners of the stock was both indispensable and sufficient.

Counsel for the plaintiff argues ingeniously that the transfer of this stock was only the corporation's way of effecting in substance a conveyance of its property without encountering the embarrassment arising from the option contained in the lease to Taylor. The evidence fails to support this contention. It may be (although there is no evidence to that effect) that the Taylor option was one of the reasons why the Farleys and O'Connor did not press attempts to buy the defendant's real estate itself. Assuming it to have been proved — as it was not — that the Taylor option was one of the reasons for the course taken, it by no means follows that the sale by stockholders of their individual holdings is in legal contemplation equivalent to the alienation by the corporation of its real estate. A commitment of the corporation, limiting its freedom to negotiate, may well enough incline investors to acquire the individual stockholdings rather than to trade with the corporation itself; but this consideration tends rather to emphasize the fact that the two courses of business are different, and between different parties, than to establish that they are the same.

If, indeed, the defendant had been a " one-man " corporation, all of the stock except a few qualifying shares being the property of a single individual or a single group, then it is conceivable that a transfer of all of the stock, in connection with other circumstances, might, for the purpose of a brokerage contract, be equivalent to a sale by the corporation of its property. Even then the defendant, who could be successfully sued upon such a contract, would apparently be the controlling stockholder who had sold his holdings, rather than the corporation. At any rate, the possibility that a case might arise in which a transfer of stock would give rise to a right of action in favor of a broker whose employment it was to sell the real property is certainly not instanced in the case at bar. The circumstances here are manifestly different from those in which a sale of stock could be deemed the equivalent of a sale of the corporation's real estate. The defendant here was not a " one-man " corporation; there were numerous stockholders, who, so far as appears, were actual and beneficial owners, not mere dummy holders of stock belonging to other persons. Their several consents to sell their stock were obtained from time to time, and as the result of a continued effort. Neither plaintiff nor Dudley F. Valentine ever communicated with any of the stockholders, or had any part in the negotiation, or series of negotiations, which eventuated in the transfer of the stock to the Farleys and O'Connor.

It is by no means surprising that plaintiff regarded the treatment accorded to him and his associate as inconsiderate. It is to be observed that plaintiff's first impulse, when he learned that the controlling interest in the defendant corporation had been transferred, was to demand his commission from Hayes, not from the defendant. From plaintiff's own evidence it is to be inferred that his customer and prospective buyer, Hayes, instead of purchasing the property, brought the matter to the attention of other persons, who, making no attempt to buy defendant's real estate, arranged to and did buy from individual stockholders so much of the stock in the company as could be purchased for the price which they offered to pay.

The question whether or not plaintiff has any grievance or cause of action against Hayes or Beaudrias, or any other individual, is not before the court. The action now at bar fails because his evidence discloses no ground of complaint against the defendant company. It does not appear that either he or any one else procured a purchaser for the company's property satisfactory to the company.

In this connection it should be remembered that not all of the stock in the defendant company was purchased by the persons

Supreme Court, March, 1927.     [Vol. 129

whom Hayes interested in the negotiation. There were and are 56 shares of the company's stock still outstanding in the hands, so far as appears, of the same owners who held it at the time of the services upon which this action is based. It would be a curious result if these stockholders were to be subjected to a diminution in the value of their stock by a charge against the company on account of sales made by other stockholders of their stock interests. There would be an equal, if less obvious, injustice in imposing upon the new stockholders a similar impairment of the value of their holdings.

Upon the third question also — as to the procuring cause of the introduction of the purchasers — the plaintiff has failed to establish his case. If the purchase of most of the stock of the corporation could be taken to be in effect the evidence or equivalent of procuring a purchaser of the corporation's property, the plaintiff's proof is still insufficient to establish that either he or Dudley F. Valentine was the procuring cause of the stock purchase. That proof of such procuring agency on the part of plaintiff is an essential part of his case is, of course, elementary. (*Donovan* v. *Weed*, 182 N. Y. 43; *Sibbald* v. *Bethlehem Iron Co.*, 83 id. 378; *Wynus* v. *Utz*, 152 App. Div. 756; *Imrie* v. *Wilson*, 3 Dominion Law, 826; *Haase* v. *Ullmann*, 148 App. Div. 40; *Sampson* v. *Ottinger*, 93 id. 226.)

The evidence at bar fails to satisfy this requirement. Neither the plaintiff nor Dudley F. Valentine suggested purchasing either the defendant's property, or the stock issued by it, to any of the purchasers; nor, so far as appears, were any of them known to the plaintiff, or to his associate, until after they had purchased the controlling interests in the defendant company. What happened was that plaintiff's customer, Hayes, himself turned broker, and introduced another person as the purchaser. In this situation the services of plaintiff and Dudley F. Valentine are only the remote, and not the efficient and procuring, cause of the sale. (*Wynus* v. *Utz, supra; Imrie* v. *Wilson, supra.*)

In each of those cases, as in the case at bar, the person approached by the plaintiff as the customer never purchased, but in turn sought another purchaser whom he interested in the property, and to whom eventually the property was sold. In each of those cases it was held that the services of the original broker were not the procuring cause of the sale. In the *Wynus* case the subject-matter of the contract was, not real estate, but a large quantity of oysters; but the court (App. Div., 2d Dept.) decided the case in accordance with the principles and authorities governing real estate brokerage transactions. In that case, plaintiff, at the instance of the defendant, procured as a prospective purchaser one Wedmore, who at that time desired 10,000 bushels of oysters for the purpose of

seeding. Wedmore, before any sale was consummated, learned that his proposed seeding ground was unsanitary, and negotiations were thereupon broken off. Some months later Wedmore himself procured, as a purchaser, the Wickford Oyster Company. In affirming the judgment entered at Trial Term upon a verdict for defendant directed by the court, the Appellate Division in the Second Department (Mr. Justice HIRSCHBERG writing) quoted with approval the following portion of the opinion in *Hamilton* v. *Gillender* (26 App. Div. 156): " To entitle a broker to commissions he must prove that he found a purchaser who was ready and willing to purchase upon terms satisfactory to his principal, *and that, by reason of his services,* the buyer and seller were brought together. * * * It is essential that the agreement, *as finally concluded,* should be procured or brought about by the broker."

In *Imrie* v. *Wilson* (*supra*) the Ontario High Court considered a similar situation relating to a sale of real estate. One Kligensmith, who had been introduced by the plaintiff, or one of his associates, was a member of a syndicate formed for the purpose of buying property in the general neighborhood of the defendant's property. This syndicate, however, failed to buy. Thereafter Kligensmith found a buyer for the property, and the defendant paid him a commission. The court dismissed plaintiff's action for a commission, based on the theory that he was the procuring cause of the sale. In its opinion the court said: " No doubt, the introduction by Stinson of Kligensmith to Wilson was the cause without which the sale would not have been effected; but was it the *causa causans,* or was there a new and distinct act which intervened which really brought about the sale? * * * It required a new act to procure a purchaser; in short, the plaintiffs' acts were not the effective cause of the sale which actually took place. The most that can be said is, that the introduction was merely a *causa sine qua non.*"

The soundness of this reasoning and its applicability appear to me manifest. Doubtless in some cases the intervention of an intermediary does not so far interrupt the effective agency of the broker seeking compensation as to prevent his being the procuring cause; *e. g., Lincoln* v. *McClatchie* (36 Conn. 136). In the case at bar, however, the contribution of plaintiff and his associate to the transaction finally consummated appears considerably less proximate than that of the unsuccessful plaintiff in either the *Wynus* case or the *Imrie* case.

Plaintiff, as previously noted, appears to me to have failed to establish that O'Connor and the Farleys were purchasers ready, willing and able to purchase defendant's property on terms satisfactory to defendant. No purchaser of the defendant's property

conforming to the terms of defendant's offer is shown to have been produced or procured by any one. If, however, the Farleys and the others who bought the corporate stock be deemed purchasers of defendant's property within the terms of plaintiff's employment, I hold that plaintiff has failed to establish that the services of himself and of his associate were the efficient cause by which the Farleys and O'Connor were procured. Plaintiff's failure to sustain his burden of proof on these two issues — indeed, his failure to sustain it on either of the two — requires that judgment be rendered against him.

A further reason for that result in the evidence at bar is the failure of the plaintiff to notify the defendant, or Henry W. Valentine, or any one else, to the effect that Hayes or Beaudrias, or those whom they or either of them should introduce, were plaintiff's customers. Doubtless, as plaintiff argues, there may be instances in which the broker is entitled to his commission, although the principal consummated the sale without knowing that the purchaser had been interested by the broker. (*Sussdorff* v. *Schmidt,* 55 N. Y. 319.) Nevertheless it is his duty to disclose to his principal at his earliest opportunity the identity of his customer. (*Metcalfe* v. *Gordon,* 86 App. Div. 368.) In that case (at p. 372) the court said: " It is not questioned but that the fact that the owner does not know that the purchaser is the customer of his broker is an important one, having a proper bearing upon the determination of who in fact was the procuring cause of a sale, and it would be easy to suggest circumstances in which the fact might be deemed controlling   *   *   *."

Under the circumstances shown at bar, the plaintiff's omission to disclose to defendant that Hayes was his customer precludes recovery, whether it be because the omission is decisive that the broker's services were not the procuring cause of the sale (*Waters & Son* v. *Rafalsky,* 134 App. Div. 870), or because such neglect is in itself a substantial failure to perform the broker's obligation to his principal. The importance of such disclosure is recognized, even by decisions in which the omission, by reason of special conditions, does not preclude recovery.

For the foregoing reasons, I have reached the conclusion that the alleged obligation of defendant to pay a broker's commission to plaintiff is not established by the evidence. Defendant, therefore, is entitled to judgment.